```
                    UNITED STATES DISTRICT COURT
                    DISTRICT OF SOUTH CAROLINA
* * * * * * * * * * * * * * * *
TOMASA ROMERO SOLIS, et al.    *
                               *
versus                         *        Case No. 9:18-cv-83
                               *
L. FRANK CISSNA, Director,     *        May 30, 2018
United States Citizenship and  *
Immigration Services, and      *
UNITED STATES CITIZENSHIP      *
AND IMMIGRATION SERVICES       *
* * * * * * * * * * * * * * * *
```

## REPORTER'S OFFICIAL TRANSCRIPT OF THE MOTION TO DISMISS HEARING HELD BEFORE THE HONORABLE MARGARET B. SEYMOUR UNITED STATES DISTRICT JUDGE, MAY 30, 2018

Appearances:

For the Plaintiffs    Barnwell, Whaley, Patterson
              & Helms
             BY:  Bradley Bruce Banias
             P.O. Drawer H
             Charleston, SC  29401
             843.577.7700

             Stephanie Nodine Law Office
             BY:  Stephanie Elizabeth Nodine
             3226 Maybank Highway, Suite B-1
             Johns Island, SC  29455
             843.277.2913

For the Defendants    U.S. Department of Justice
             BY:  Julian Michael Kurz
             P.O. Box 868, Ben Franklin Station
             Washington, DC  20044
             202.616.4962

             U.S. Attorneys Office
             BY:  Matthew J. Modica
             151 Meeting Street, Suite 200
             Charleston, SC  29401
             843.266.1676

Official Court Reporter:  Tana J. Hess, CRR, FCRR, RMR
             U.S. District Court Reporter
             85 Broad St., Charleston, SC 29401

Proceedings recorded by mechanical stenography using computer-aided transcription software.

1          (Call to order of the Court.)

2          **THE COURT:**  Good afternoon.  You may take your seats.

3    This afternoon we have a hearing in the matter of Solis, et al.

4    versus Cissna, et al.  This is civil action number 18-83.  And

5    we are here on the defendants' Motion to Dismiss, and I'll hear

6    from the defendants at this time.

7          **MR. KURZ:**  Good afternoon, Your Honor.

8          **THE COURT:**  Good afternoon.

9          **MR. KURZ:**  Julian Kurz representing defendant, U.S.

10   Citizenship and Immigration Services.

11          The Court should dismiss this case for failure

12   to state a claim.  Count 1, the mandamus claim, should be

13   dismissed because plaintiffs do not identify any statute or

14   regulation that requires the agency to make U visa waiting list

15   decisions, let alone a statute or regulation that requires the

16   agency to do so within a specific time frame.

17          Count 2, the unreasonable delay claim, should be

18   dismissed because plaintiffs do not allege any facts that

19   provide a basis to compel the agency to adjudicate their

20   petitions at the expense of equally deserving U visa

21   petitioners.

22          And Count 3, the due process claim, should be

23   dismissed, because as the Fourth Circuit has held, quote, "A

24   U visa application does not create a liberty or property

25   interest protected by the due process clause."

3:52PM  1          Going back to the mandamus claim, plaintiffs

3:52PM  2    rely exclusively on 8 CFR Section 214.14(d)(2) which provides

3:52PM  3    that, "All eligible petitioners who, due solely to the cap, are

3:52PM  4    not granted U-1 nonimmigrant status must be placed on a waiting

3:52PM  5    list."  The key word is "eligible".  If USCIS decides that a

3:52PM  6    petitioner is eligible, then it has a duty to place the

3:52PM  7    petitioner on the waiting list.

3:52PM  8          THE COURT:  So how -- how do they decide when

3:52PM  9    somebody is eligible?

3:52PM  10         MR. KURZ:  They review the evidence that the

3:52PM  11   petitioner submits.  Oftentimes they conduct background checks,

3:52PM  12   request additional evidence.  In many U visa cases, the

3:53PM  13   majority, the petitioner also needs to have a ground of

3:53PM  14   inadmissibility waived.  So there's an additional step of

3:53PM  15   adjudicating an application for a waiver of inadmissibility,

3:53PM  16   and without that waiver, the petitioner can't obtain U visa

3:53PM  17   status.  So these are all things that the agency has to do to

3:53PM  18   decide whether -- whether to grant or deny a petition.

3:53PM  19         THE COURT:  So the plaintiffs are arguing that they

3:53PM  20   are required to be placed on this U visa waiting list, but

3:53PM  21   you're saying that they have to be determined eligible before

3:53PM  22   they can be put on this list.  Is that what you're saying?

3:53PM  23         MR. KURZ:  That's right, Your Honor.

3:53PM  24         THE COURT:  And so there's nothing that requires the

3:53PM  25   government to determine eligibility at any particular time?

1    **MR. KURZ:**  Not at any particular time.  There may be

2    some statute or regulation that requires the government to make

3    U visa waiting list decisions, but the stat -- the regulation

4    upon which plaintiffs rely is not it.  They rely --

5    **THE COURT:**  So you're saying there is something out

6    there.  They just didn't name the right one.  Is that what

7    you're saying?

8    **MR. KURZ:**  It's not clear to me that there is

9    something out there, that there is any requirement that the

10    agency make U visa waiting list adjudications, and this

11    regulation certainly does not require it.  This regulation

12    requires only that if a petitioner is eligible -- which is a

13    decision that is made through the adjudication process -- that

14    that petitioner is placed on a waiting list once the agency

15    finds that she's eligible.  Then there's a duty to place the

16    person on the waiting list.

17    Here they want to compel the agency to make

18    that -- do the initial step of determining whether they are

19    eligible to be placed on the waiting list.

20    **THE COURT:**  So in this case, these plaintiffs have

21    not been determined to be eligible?  Is that what you're

22    saying?

23    **MR. KURZ:**  Yes, Your Honor.

24    **THE COURT:**  So this average waiting period that

25    you've cited in your briefs, is that the eligibility period, or

3:55PM  1    is that the waiting list period?  I think you've cited

3:55PM  2    something like 50 -- 40 something to 50 months.  Is that the

3:55PM  3    period to determine eligibility, or is that the period to

3:55PM  4    determine -- from eligibility to get on the waiting list?

3:55PM  5    Which period is that?

3:55PM  6            MR. KURZ:  That is the -- that is the period of time

3:55PM  7    for adjudication, which is typically an adjudication that

3:55PM  8    results in placement on the waiting list.

3:55PM  9            THE COURT:  The eligibility adjudication period.

3:55PM  10           MR. KURZ:  Yes, yes, the determination of

3:55PM  11   eligibility, and if no U visas are available at the time that

3:55PM  12   decision is made, then the petitioner is placed on the waiting

3:55PM  13   list as opposed to being given a U visa right away.

3:55PM  14           THE COURT:  So what is the average time for an

3:55PM  15   applicant to be placed on the waiting list, assuming the yearly

3:55PM  16   cap has been met?  You've already met your --

3:55PM  17           MR. KURZ:  Well, it's difficult to say the average

3:55PM  18   time.  Currently the -- the estimated time or the average time

3:55PM  19   is approximately 42 months, and the upper range or 130 percent

3:56PM  20   of the average time is 54.5 months, but that time fluctuates

3:56PM  21   all the time, and the reason for that is -- or one of the

3:56PM  22   reasons for that is that many petitions fall into exceptions to

3:56PM  23   the general rule.  The general rule is that the -- that

3:56PM  24   applications are adjudicated in the order in which they are

3:56PM  25   filed.  The agency starts to adjudicate petitions on a

first-in, first-out basis.  Of course, some take longer to
adjudicate than others, but the exceptions to that general rule
are that when a -- when ICE makes a request to USCIS based on
the fact that a U visa petitioner is in removal proceedings or
is subject to a final removal order, then the agency expedites
adjudication.  Now that the current administration has
increased its enforcement efforts, there are more petitioners
who fit into those exceptions.  There are more people who
either are subject to final removal orders who were in removal
proceedings, and thus the agency has fewer resources to devote
to the petitioners who don't fall into those exceptions, and so
the times keep getting longer for those petitions to be
adjudicated.

       THE COURT:  So these individuals suffer because you
have no resources?  Is that what you're saying?

       MR. KURZ:  Yeah, this is a --

       THE COURT:  So why are there not more resources?  If
the government is going to impose this, why don't they also --
if you're going to make a rule, then you do something to
enforce it.  You get more resources if that's what you want to
do.  Why has that not happened?

       MR. KURZ:  I agree with Your Honor that that would be
ideal for Congress to allocate more resources and more funding,
but numerous Courts recognize that this is a problem for the
political branches.  This Court --

3:57PM  1          THE COURT:  Have there been any proposals to get more

3:57PM  2    resources for this department?

3:57PM  3          MR. KURZ:  Well, the agency has requested additional

3:57PM  4    funding, and --

3:57PM  5          THE COURT:  For this particular program?

3:58PM  6          MR. KURZ:  This agency has -- USCIS has said that

3:58PM  7    U visas are a priority, and in fact, in August 2016 -- and this

3:58PM  8    fact is subject to judicial notice.  In August 2016, the agency

3:58PM  9    began to assign petitions to a second service center.

3:58PM  10   Previously only one service center was adjudicating them.  Now

3:58PM  11   two are.  The agency did that to combat this backlog, but

3:58PM  12   petitions have increased fivefold since fiscal year 2009.  The

3:58PM  13   backlog is now over 190,000 petitions, so the agency simply

3:58PM  14   can't keep up.  Congress hasn't allocated enough funding or

3:58PM  15   resources, and really if the agent -- if the Court compelled

3:58PM  16   the agency to adjudicate those petitions, it would just come at

3:58PM  17   the expense of other U visa petitioners or more generally the

3:58PM  18   agency's overall mission of adjudicating immigration benefit

3:58PM  19   petitions.  That's what USCIS does.  It adjudicates petitions

3:58PM  20   for immigration benefits, and compelling agency action here

3:58PM  21   will just take away from other areas.

3:59PM  22          THE COURT:  Now, the plaintiff has cited to some

3:59PM  23   reports and press releases regarding the pilot programs that

3:59PM  24   USCIS has undertaken.  Can you explain some more about these

3:59PM  25   pilot programs?

3:59PM 1      **MR. KURZ:**  This is a pilot program to improve the

3:59PM 2   reporting of processing times.  Nothing in that report suggests

3:59PM 3   that there is not a line for waiting list adjudications as

3:59PM 4   plaintiffs have suggested.  All that that report says -- and

3:59PM 5   this is a quote from the -- this is a quote from the report.

3:59PM 6   "USCIS has recently launched a pilot program to improve how the

3:59PM 7   agency calculates and posts processing times."  The goal of

3:59PM 8   this project was to improve the reporting of processing times,

3:59PM 9   not to actually improve processing times or to put things into

3:59PM 10  align.  These are already being -- these petitions are already

3:59PM 11  being adjudicated on a first-in, first-out basis.  They're --

3:59PM 12  the agency starts to adjudicate them in the order in which they

3:59PM 13  are filed.  The only issue that is raised in that report is

4:00PM 14  that the agency needed to improve the way it was communicating

4:00PM 15  to members of the public or to petitioners the time that it

4:00PM 16  takes for their petitions to be adjudicated.

4:00PM 17         **THE COURT:**  Are there any pilot programs specific to

4:00PM 18  the U visa application process?

4:00PM 19         **MR. KURZ:**  This pilot program is not specific, I

4:00PM 20  don't believe, to the U visa program.  In fact, it applies

4:00PM 21  specifically to four other types of immigration benefits,

4:00PM 22  including the I-130 and three others.

4:00PM 23         **THE COURT:**  So there is no pilot program for the

4:00PM 24  U visa program?

4:00PM 25         **MR. KURZ:**  The agency -- I'm not a hundred percent

4:00PM   1    sure on this, but I believe that the agency is testing out this

4:00PM   2    program in four benefit categories, including the I-130, and

4:00PM   3    then based on the results of that program -- and again, this is

4:00PM   4    just about reporting processing times, but this reporting

4:00PM   5    program, they're testing it out with four types of benefit

4:00PM   6    petitions, and then if it works well, they'll use it for all

4:00PM   7    the others, including U visa petitions.

4:01PM   8            THE COURT:  So going back to 8 CFR 214.4(d)(2), USCIS

4:01PM   9    is required to place plaintiffs on the U visa waiting list and

4:01PM  10    provide plaintiffs a written notice of such placement; correct?

4:01PM  11    Is that what that provides?  The statute that we're talking

4:01PM  12    about here, the requirement to place people on this waiting

4:01PM  13    list.

4:01PM  14            MR. KURZ:  (d)(2) -- (d)(2) says that, "All eligible

4:01PM  15    petitioners who, due solely to the cap, are not granted U-1

4:01PM  16    nonimmigrant status must be placed on a waiting list."  And

4:01PM  17    then the second part of it provides the rule of reason, which

4:01PM  18    is that, "Priority on the waiting list is determined by the

4:01PM  19    date the petition was filed."  Is that what Your Honor quoted?

4:01PM  20            THE COURT:  Yeah.  So there's a requirement that --

4:01PM  21    based on this regulation, USCIS is required to place

4:02PM  22    individuals on a U visa waiting list and provide them with

4:02PM  23    written notification; is that correct?

4:02PM  24            MR. KURZ:  No, Your Honor.

4:02PM  25            THE COURT:  Once they've been determined to be

1    eligible, they're not required to --

2              MR. KURZ:  Yes, once they are determined to be

3    eligible, then they're required to be placed on the waiting

4    list.

5              THE COURT:  But there's no provision for the first

6    part to determine what happens when -- to make them eligible?

7    So they're just sort of floating around waiting for

8    eligibility, and then once they're granted eligibility, then

9    they have to be put on this list?  Is that what you're saying?

10             MR. KURZ:  Once they get to the front of the line, so

11   to speak, and the agency adjudicates their petition, finds that

12   they are eligible for placement on the waiting list -- in other

13   words, that they would get a U visa --

14             THE COURT:  So you get in line to be eligible, but

15   you could be in that line forever, and then once you're

16   eligible, you have to be on a waiting list.  Is that what

17   happens?

18             MR. KURZ:  If there are no visas available, then

19   you'd have to go on the waiting list.  You can't be in the line

20   forever; just as long as it takes for the agency to adjudicate

21   all the other petitions that are filed before yours.

22             THE COURT:  So what is the average time for people to

23   be on this eligibility waiting list -- not waiting list, but

24   waiting to be on the --

25             MR. KURZ:  You're asking once a --

| | |
|---|---|
| 4:03PM | 1 |

THE COURT:  Before -- how long does it take to be eligible is what I'm trying to find out.

MR. KURZ:  To be found to be eligible?

THE COURT:  Yes.

MR. KURZ:  The average time is 42 months approximately.  That's an estimate of the average time that it takes, 42 months.  The agency says that the current case inquiry date is December 10th, 2013.  If a case -- if a petition was filed before that time, it's considered to be outside normal processing times.  That's the date beyond which the agency considers in -- a petition to have sat for too long, and that's the point at which it -- it instructs or tells petitioners that they can contact the ombudsman for assistance with finding out about the status of their petition.

THE COURT:  So there is a process.  If a person feels they've been waiting too long to be eligible, there's an administrative process to have somebody look into it?

MR. KURZ:  That's correct, yes.

THE COURT:  All right.  And how long do you have to be waiting for eligibility to do that?

MR. KURZ:  My understanding is that a petitioner can make that request once they're beyond the normal processing times or this case inquiry date --

THE COURT:  Which is?

MR. KURZ:  Which is currently 54.5 months ago.

4:04PM 1    **THE COURT:** So if I were waiting for eligibility, and

4:04PM 2    I've been waiting 56 months, then I can go through this other

4:04PM 3    process?

4:04PM 4    **MR. KURZ:** Then you can ask the agency, "Why is this

4:04PM 5    taking so long? Will you look into --"

4:04PM 6    **THE COURT:** So how does one know what this magic

4:04PM 7    period is, the 52, the 42, the 56 months? How does one know?

4:05PM 8    **MR. KURZ:** It's posted on the USCIS website, and

4:05PM 9    that's the issue with the report. Plaintiffs argue that the

4:05PM 10   times posted on the website are not accurate, and the agency

4:05PM 11   recognized that they could improve that, and we acknowledged

4:05PM 12   that. But the bottom line is that plaintiffs seek to jump to

4:05PM 13   the front of the line. Regardless of any deficiencies in

4:05PM 14   reporting of processing times, the point remains that if a

4:05PM 15   Court compelled agency action here, it would just be

4:05PM 16   encouraging petitioners to filed these types of lawsuits to

4:05PM 17   jump to the front of the line, and nothing distinguishes

4:05PM 18   Miss Solis from the plaintiff -- other U visa petitioners whom

4:05PM 19   she seeks to jump in line, or at least she hasn't alleged

4:05PM 20   anything that would distinguish her in the complaint.

4:05PM 21   **THE COURT:** Okay. So -- so your position as -- that

4:05PM 22   these plaintiffs want to get in front of everybody else as

4:05PM 23   opposed to trying to improve the process, I mean -- they

4:06PM 24   want -- it appears based on their complaint that they want

4:06PM 25   to -- they feel that they're being treated differently than you

treat other U visa applicants, because it's taking them longer to get an eligibility -- eligibility determination than other people in their same situation.

**MR. KURZ:**  No.

**THE COURT:**  You disagree with that?

**MR. KURZ:**  Yes.  There's absolutely no evidence of that.  The only evidence that they've cited to support that point is another case that's before another judge in this district, and they cite to a stipulation, and they say that another petition -- I can't talk about the facts of that case, because the statute prohibits me from doing so, but if I talk about this hypothetically, I think Your Honor will understand.

This is basically the situation.  If a principal petitioner -- so there are principal petitions and derivative U visa petitions, and the derivatives are adjudicated at the same time as the principal petition to which they correspond. So if a principal petitioner filed in 2012 and then her derivative files in 2015, the derivative will be adjudicated before a principal petition that was filed in 2013 or 2014, because it relates back to that 2012 one.

There's no evidence that the agency is adjudicating petitions out of order.  The only other evidence that they -- that they cite is these examples of -- of expedited adjudication.  As I mentioned, when a petitioner is in removal proceedings or subject to a final removal order, her

4:07PM   1   petition gets priority, and that makes sense, because those are

4:08PM   2   people who face an immediate threat of removal from the

4:08PM   3   country. Miss Solis is not in removal proceedings. She

4:08PM   4   doesn't have a final removal order. She does not face an

4:08PM   5   immediate threat of deportation, so it makes sense for the

4:08PM   6   agency to prioritize someone else's petition.

4:08PM   7         THE COURT: So is USCIS still making U visa waiting

4:08PM   8   list decisions? Are you still making those decisions?

4:08PM   9         MR. KURZ: Of course.

4:08PM   10         THE COURT: Plaintiffs have alleged that you've

4:08PM   11   stopped doing that.

4:08PM   12         MR. KURZ: There's absolutely no evidence on that. I

4:08PM   13   don't know on what basis they allege that. They, in fact,

4:08PM   14   point to examples of petitions that have been adjudicated.

4:08PM   15         THE COURT: So you're still making those decisions on

4:08PM   16   people that are not in removal proceedings?

4:08PM   17         MR. KURZ: Now, that is not -- yes, but only in a

4:08PM   18   limited number. As I mentioned, the -- the exceptions, the

4:08PM   19   people who are in removal proceedings or subject to a final

4:08PM   20   removal order, consume such a large portion of the agency's

4:08PM   21   resources because so many people now do fall into those

4:09PM   22   exceptions that there are not many resources remaining for the

4:09PM   23   people who don't fall into those exceptions. But yes, some of

4:09PM   24   them are being adjudicated, and --

4:09PM   25         THE COURT: So what percentage of those people --

1    those cases are being adjudicated, the ones that are not in

2    removal status?

3        **MR. KURZ:**  I don't know the percentage, Your Honor.

4        And going back to the legal standard for an

5    unreasonable delay claim, many courts analyze these types of

6    claims under a six-factor test set out in 1984 D.C. Circuit

7    case, TRAC, Telecom Research and Action Council or -- and the

8    fourth TRAC factor is the effect of compelled agency action on

9    activities of competing priority.  Just last year, Judge Gergel

10   recognized that when the competing priorities factor weighs in

11   an agency's favor, Courts have quote "refused to grant relief",

12   even though all the other factors considered in TRAC favored

13   it.

14       Here the competing priorities factor weighs in

15   the agency's favor, because compelling the agency to adjudicate

16   the plaintiff's petitions would produce no net gain, and it

17   would come at the expense of the plaintiffs who are ahead -- of

18   the petitioners who were ahead of plaintiffs in the line

19   awaiting U visa adjudications.

20       And given that plaintiffs haven't distinguished

21   themselves from the people whom they seek to jump in line, they

22   can't state a claim for unreasonable delay.  This is an issue

23   of funding and of resources.  Your Honor asked whether there's

24   anything that plaintiffs could do if they wanted to complain

25   about the length of time that this is taking, if they wanted to

challenge that in some way, and the answer is that they should talk to their senators and congressman and ask them to get Congress to allocate more funds to USCIS or specifically to USCIS's budget for adjudicating U-visa's petitions.  Until Congress allocates more funds, the agency's just doing the best it can with the resources that it has.  It's making U visa petitions a priority.  It added a second service center to start adjudicating additional petitions, that fact subject to judicial notice.  There's been a fivefold increase in petitions since 2009.  The agency now has over 192,000 -- 190,000 U visa petitions pending.

          I haven't said much about the due process claim, but the Fourth Circuit has held that a plaintiff -- plaintiff who asserts a procedural due process claim must show that she has property or liberty interest at stake, and the Fourth Circuit has also said that a U visa application does not create a liberty or property interest protected by the due process clause.  So here plaintiffs can't establish that they have any liberty or property interest at stake.

          As I mentioned, there are many reasons why adjudication times can vary.  Some petitions take longer to adjudicate than others, because the agency needs to request additional evidence from the petitioner.  Sometimes the agency needs to go to the law enforcement agency that certified that the petitioner was eligible for the U visa and request

additional information from them.  Sometimes the agency does background checks.  As I mentioned, oftentimes there's a waiver of inadmissibility that needs to be adjudicated in addition to the actual U visa petition.  So all these things can cause a variation in the adjudication times.  And that also doesn't show -- the fact that the adjudication times is varied doesn't show that the agency is not following the rule of reason.  It starts adjudicating them in chronological order, just as a Court would.  As cases come in, the Courts start to adjudicate them, but all cases aren't necessarily resolved in the same amount of time.  It's the same thing here.

THE COURT:  Okay.  Thank you very much.

MR. KURZ:  Thank you.

THE COURT:  All right.  I'll hear from the plaintiff.

MR. BANIAS:  Thank you, Your Honor.  And may it please the Court, my name is Brad Banias, and I, along with my co-counsel Stephanie Nodine, represent Miss Solis and her family.

THE COURT:  Okay.

MR. BANIAS:  Your Honor, Ms. Solis has been waiting 39 months.  39 months.  When we filed the Amended Complaint, she was at three full years since she filed her U visa application.  Our contention today is that the decision, the limited decision to put her on the wait list, Your Honor -- that is, she would need to get on to a waiting list to then

4:13 PM  1    wait for the Visa -- that 39 months is an unreasonable delay.

4:13 PM  2            THE COURT:  So has anything been done with regard to

4:13 PM  3    her eligibility request?

4:13 PM  4            MR. BANIAS:  Your Honor, in the government's Motion

4:14 PM  5    to Dismiss, they state affirmatively that they have not started

4:14 PM  6    adjudication of her application.  In our original complaint in

4:14 PM  7    this court, we did a FOIA cause of action, and the government,

4:14 PM  8    to their credit, turned over the file, and there's no

4:14 PM  9    indication in anything that we've been seeing that any

4:14 PM  10   adjudicatory act has taken place, Your Honor, and so I think

4:14 PM  11   the answer to that question is no.  I think the government

4:14 PM  12   would agree with that.

4:14 PM  13           The government also came up and averred a lot of

4:14 PM  14   facts.  It also denied a lot of facts from our complaint.  And,

4:14 PM  15   Your Honor, that's not what a 12(b)(6) motion is for.  If they

4:14 PM  16   want to deny allegations and they want to aver other facts,

4:14 PM  17   they can answer the complaint.  They can provide a certified

4:14 PM  18   administrative record to prove it, and we can let this Court

4:14 PM  19   decide whether the delay is unreasonable under the

4:14 PM  20   Administrative Procedure Act, through dispositive motions, and

4:14 PM  21   that's what this Court should do.

4:14 PM  22           My opposing counsel, he said it's an issue of

4:14 PM  23   resources.  Well, they need to prove that.  They've said that,

4:14 PM  24   "We adjudicate on a first-in, first-out basis."  Your Honor, we

4:15 PM  25   disagree with that, and we do assert there is no line, but we

4:15 PM  1   also assert other facts that would prove that up.

4:15 PM  2           We -- there's a lot of discussion about the new

4:15 PM  3   reported processing times.  First, USCIS, the defendant here,

4:15 PM  4   has admitted that it has known that its processing times were

4:15 PM  5   inaccurate for about the last five years.  To improve that,

4:15 PM  6   they have now started expressing processing times in a range.

4:15 PM  7   So it'll say, "January to December.  If you filed your

4:15 PM  8   application anytime within that 12 months, you can expect a

4:15 PM  9   decision."  That necessarily indicates that if I filed it in

4:15 PM  10  August -- or someone filed in August and I filed in January,

4:15 PM  11  then the later-filed application could be decided the same time

4:15 PM  12  as the earlier-filed application.  They're being treated

4:15 PM  13  differently.  They're being started at different times, Your

4:15 PM  14  Honor.  And at a minimum, we've alleged sufficient facts to

4:15 PM  15  state a claim for that basis.

4:16 PM  16          My opposing counsel mentioned the other case,

4:16 PM  17  the stipulated dismissal that was cited.  That case is actually

4:16 PM  18  in front of Your Honor.  It's called Romero Aguilar.  We filed

4:16 PM  19  that on the same day we filed this case.  The plaintiffs in

4:16 PM  20  Romero Aguilar filed their U visa derivative applications at

4:16 PM  21  the same time as Ms. Solis and her family; filed their

4:16 PM  22  principal and derivative applications, and I can tell you this.

4:16 PM  23  The Romero Aguilar, as the stipulated dismissal notes, never

4:16 PM  24  received a wait list decision, Your Honor.  They received

4:16 PM  25  visas.  Okay?  They skipped over the entire wait list process.

And so the distinction between the eligibility versus the wait list versus the visa is being skipped over, which leads to our allegation that the agency -- for petitioners not in removal proceedings or without a removal order, the agency is just choosing not to make wait list decisions.

And this problem, these delays, the prejudice from them are being compounded. Just a couple of weeks ago, the current Attorney General issued a new decision called "Castro-Tum". I don't want to get too into the weeds, but essentially the current Attorney General said that immigration judges can no longer administratively close a removal proceeding. For years immigration judges have seen people in immigration court who have a U visa application pending, and they would administratively close the case. So now that administrative closure is no longer allowable by immigration judges, U visa applicants who are still in those removal proceedings are going to flood the agency, and all of those people, as my opposing counsel just admitted, will jump the line, jump in front of Miss Solis. And so this concept of a line is just the wrong metaphor, Your Honor.

My opposing counsel also noted derivatives are treated differently than principle applicants. This notion of a line is just wrong.

THE COURT: So my understanding is that if you

4:17PM 1  filed -- if the principal filed an application in 2001 say,

4:18PM 2  derivative filed an application in 2002, then the derivative's

4:18PM 3  would jump ahead and be adjudicated the same time as the person

4:18PM 4  in 2001; is that true?

4:18PM 5      MR. BANIAS:  I'm guessing -- I think that's the

4:18PM 6  position of the government.  But, Your Honor, I don't think

4:18PM 7  there's anything that systematic about it, and that's why this

4:18PM 8  is inappropriate to dismiss on 12(b)(6).  The government needs

4:18PM 9  to prove there's a line.

4:18PM 10     And I'll just point you to that case from just

4:18PM 11 February of this year up in Chicago called *Haus*, H-a-u-s, *v.*

4:18PM 12 *Nielsen*.  It's cited in our briefing, where the judge addressed

4:18PM 13 this exact same argument out of my opposing counsel's same

4:18PM 14 office up in D.C. and essentially said, "The Court is only

4:18PM 15 dealing with the plaintiff's complaint.  The government has not

4:18PM 16 been called upon to offer any sort of explanation for the

4:18PM 17 delay."  We are before they get the opportunity to explain.

4:19PM 18 They need to answer.  They need to file a certified

4:19PM 19 administrative record, and we need to do dispositive

4:19PM 20 cross-motions.  And, Your Honor, if they can't provide a

4:19PM 21 complete certified administrative record, then we need to talk

4:19PM 22 about supplementing or completing it.

4:19PM 23     THE COURT:  What's the difference between the relief

4:19PM 24 you're seeking in your request for mandamus and what you're

4:19PM 25 seeking under the APA claim?  Are they the same?  Are you

4:19PM
4:19PM
4:19PM
4:19PM
4:19PM
4:19PM
4:19PM
4:19PM
4:19PM
4:19PM
4:19PM
4:19PM
4:19PM
4:20PM
4:20PM
4:20PM
4:20PM
4:20PM
4:20PM
4:20PM
4:20PM
4:20PM
4:20PM
4:20PM
4:20PM

1   seeking something different?

2           MR. BANIAS:  I think that the relief is the same, but

3   the nature of the challenge is different.  A mandamus, from our

4   perspective, would be appropriate if the agency has completely

5   stopped doing something that it's required to do.  And we -- I

6   do want to point out, Your Honor, you pointed to the language

7   of 214.14(d)(2), and you are exactly right.  It says, "All

8   eligible petitioners who, solely due to the cap, are not

9   granted U-1 nonimmigrant status must be placed on the waiting

10  list."  That's mandatory language.  My opposing counsel has

11  identified and created new --

12          THE COURT:  Well, he had a different category.  You

13  have to be eligible before you can get on the list.

14          MR. BANIAS:  That's right, Your Honor.  In our

15  mandamus claim, to answer the question, we allege that all of

16  our people are eligible, and that they're not making wait list

17  decisions for eligible petitioners.

18           I want to point out the nature of the decision

19  that has to be made before you can go on the wait list, it

20  comes from the statute, Your Honor.  8 USC 1227(d), and it's --

21  that section is titled "Administrative Stay".  And it says, "If

22  the Secretary of Homeland Security determines that an

23  application for nonimmigrant status under (T) or (U) of this

24  title filed for alien sets forth the prima facie case for

25  approval," a prima facie case for approval, that the Secretary

4:20PM 1     can grant an administrative stay.  That's the only decision

4:20PM 2     that has to be made.  This is a far cry from the case that they

4:20PM 3     cite throughout their brief out of D.C called *Mashpee*.  That

4:20PM 4     was where a group I think from Connecticut was seeking to be

4:20PM 5     deemed a tribe in front of the Bureau of Indian Affairs, and if

4:20PM 6     you look through the analysis that had to take place in that

4:21PM 7     particular case -- again, that's their primary case they rely

4:21PM 8     on -- it required a genealogist.  It required a historian.  It

4:21PM 9     required all sorts of other experts, and you know how many

4:21PM 10     people were in that line, Your Honor?  Ten.  Ten people were in

4:21PM 11     that line, and they could prove there was a line.  That's a far

4:21PM 12     cry from a prima facie determination that the applicants are

4:21PM 13     eligible to get them on to the wait list.

4:21PM 14     **THE COURT:**  So if the Court were to determine that

4:21PM 15     there's an unreasonable delay, what relief -- what are you

4:21PM 16     requesting the Court to do?

4:21PM 17     **MR. BANIAS:**  At this stage, Your Honor, we're just

4:21PM 18     asking you to deny the Motion to Dismiss and let the government

4:21PM 19     prove their case or try.  Give us a certified administrative

4:21PM 20     record.  If that record indicates that 39 months is a

4:21PM 21     reasonable delay, then, Your Honor, my clients lose, and we

4:21PM 22     keep waiting.  If it indicates it's an unreasonable delay and

4:21PM 23     that as we believe the FOIA shows it's just been sitting on a

4:21PM 24     shelf for three years -- literally, we have the shelf number --

4:22PM 25     then this Court should order the agency to make a decision on

those applications or take adjudicatory action to get them on to the wait list.  Once they're on the wait list, Your Honor, they can apply for a -- for work authorization.  With work authorization, they can apply for a social.  With a social and work authorization in the state of South Carolina, they can acquire a driver's license.

This is a far cry also from the case that my opposing counsel cited that I lost last year in front of the Judge Gergel called *Alkassab*.  In the *Alkassab* case, Judge Gergel pointed out that the plaintiff there had work authorization and had a stay of removal.  But I urge this Court to go and look at that case and look at the entire docket on PACER, because after we lost the case, the government came in and said, "Look, under our processing times, Mr. Alkassab will get an interview for his asylum application in October of 2017."  We lost the case.  We didn't appeal.  We wanted to wait.  October 2017 came and went.  No interview.  One year from the decision, about two weeks shy of that, the agency changed its way of doing asylum interviews; not first-in, first-out.  We filed a Rule 59/Rule 60 to indicate that the information that the Court had relied on, processing times, clearly wasn't accurate, and that the agency had changed things up.  Through a settlement we resolved that, and Mr. Alkassab ended up with an interview, and that's all of record.

But I do want to point out, I think the flaw in

that *Alkassab* decision was that Judge Gergel denied it at the 12(b)(6) stage. He didn't make the government prove it, and that's what we're asking you to do here today, Your Honor.

Say that we -- find that we have stated a claim. Find that the defendant cannot deny and aver things in a 12(b)(6) motion, and order them to provide a certified administrative record and let us brief this in front of you, Your Honor. Thank you.

THE COURT: All right. Anything else?

MR. KURZ: Yes, Your Honor, just briefly, if I may.

THE COURT: You may.

MR. KURZ: First, the facts that the government has averred here are subject to judicial notice. We're talking about statistics that are available on a government website and are not subject to reasonable dispute. The backlog is subject to judicial notice, the extent of the backlog. The number of petitions before the agency is subject to judicial notice. The processing times are subject to judicial notice.

Opposing counsel mentioned repeatedly that the Court should wait -- not dismiss this case at this stage, and that the appropriate thing would be to see the administrative record. It's not clear to me what that even means in this context. We're not talking about an administrative review case. Typically an administrative record is the record of the agency's adjudication that the Court then reviews. This is an

unreasonable delay claim.

I'm not sure exactly what he means when he says that the government should produce an administrative record. We're talking about the funding that Congress has allocated for USCIS, the size of USCIS's budget, the number of employees that it has to adjudicate U visa petitions.  Until Congress allocates more funds, there's really nothing that the agency can do, and there's no other facts that the Court needs or that the government can really produce.  I don't know what he means when he says that the agency should produce an administrative record.  We're talking about unreasonable delay.

He also said that -- that plaintiffs have alleged that they are eligible and that, therefore, they must be placed on the waiting list.  They can't just allege that they are eligible and then say that the agency has a clear duty to place them on the waiting list.  The agency has to go through the adjudication process and decide if they are eligible based on a review of the evidence that they've submitted.  And the full adjudicatory process has to -- has to be completed before they can -- before -- in other words, they don't plausibly allege that they're eligible.  That's something that the agency has to decide based on a process.

And then just finally, he mentioned this Northern District of Illinois case, *Haus*, in which the Court said that it wasn't appropriate to resolve this on a Motion to

4:26PM 1  Dismiss, and I'd say that there the Court relied on a Seventh

4:26PM 2  Circuit case from 2017 called *Calderon-Ramirez* that

4:26PM 3  interestingly actually affirmed a dismissal of an unreasonable

4:26PM 4  delay claim on a Motion to Dismiss.  And *Calderon-Ramirez* had

4:26PM 5  looked at the statistics and other facts that I mentioned, and

4:26PM 6  then the *Haus* Court said, "Well, given that we're looking at

4:26PM 7  all these facts as to the reasons for -- for the delay, that --

4:26PM 8  the amount of the agency's resources, that's something we

4:26PM 9  should look at on summary judgment."  But what I think the *Haus*

4:26PM 10 Court failed to recognize is that all those facts are subject

4:26PM 11 to judicial notice.  We're talking about statistics, the size

4:27PM 12 of the agency's budget.  There's really nothing that can come

4:27PM 13 out in summary judgment that would change anything.

4:27PM 14 The relevant facts here are statistics that are

4:27PM 15 available on government websites, so there's no reason for the

4:27PM 16 Court to require the government to produce an administrative

4:27PM 17 record, whatever that would mean here.

4:27PM 18 Plaintiffs have failed to state a claim, and

4:27PM 19 defendants respectfully request that the Court dismiss the case

4:27PM 20 pursuant to Rule 12(b)(6).  Thank you.

4:27PM 21 **THE COURT:**  Thank you.  Let me ask Plaintiff's

4:27PM 22 counsel about the administrative record issue and what it is

4:27PM 23 that you think that that would provide that the Court doesn't

4:27PM 24 already have.

4:27PM 25 **MR. BANIAS:**  Yes, Your Honor.  The idea that you can

4:27PM    1    do an APA case without an administrative record is confusing to

4:27PM    2    me, and I will tell you I spoke to plaintiff's counsel in *Haus*

4:27PM    3    this afternoon, and the government turned over a record in that

4:27PM    4    case, so I'm a little confused.  But the record's got to

4:28PM    5    prove -- we can't -- whether there's a line or not is not a

4:28PM    6    statistic.  The -- we can look and see the budget that was

4:28PM    7    provided to USCIS.

4:28PM    8           THE COURT:  So what -- let me just make sure I

4:28PM    9    understand.  When you say you want the administrative record,

4:28PM   10    you want the administrative record for your client's case, what

4:28PM   11    has been done with their case?

4:28PM   12           MR. BANIAS:  That's right.

4:28PM   13           THE COURT:  What record the government has on their

4:28PM   14    case?

4:28PM   15           MR. BANIAS:  That's right, Your Honor.

4:28PM   16           THE COURT:  So you would be asking the government to

4:28PM   17    give you the file for these individuals, and you would be able

4:28PM   18    to look at that and determine what's happened.  Is that what

4:28PM   19    you're saying?

4:28PM   20           MR. BANIAS:  I think that's right, Your Honor.  And

4:28PM   21    we would argue -- I mean, in a hypothetical world, we could

4:28PM   22    imagine an administrative record that proves that delay here is

4:28PM   23    reasonable.  Let's say it shows that the agency did do an

4:28PM   24    investigation, that that investigation took six months, and

4:28PM   25    then it had to go to a different agency, and the third party

agency went abroad and did some other investigation, and then
it came back.  I can imagine that if we saw ongoing progress in
a case, that the administrative record would prove up the delay
was reasonable.  I don't think that is what we're going to find
here, but either way, I think my client is entitled to see
whether the delay is arbitrary and capricious, violative of the
Constitution, or falling below a right created by statute under
706(2)(a) of the Administrative Procedure Act.  That's where we
get the language that this Court can compel an unreasonably
withheld decision; 706, the same place we get the standards for
challenging a final agency action.  So I don't think they're as
different as my opposing counsel claims they are.

        And I will say this, Your Honor.  If the
government can't provide an administrative record, I'm happy to
engage in open discovery with them.

        **THE COURT:**  All right.

        **MR. BANIAS:**  Thank you, Your Honor.

        **THE COURT:**  Does the government keep records on each
individual who's filed a complaint, and how are they kept?

        **MR. KURZ:**  Your Honor, opposing counsel has
acknowledged that his client's file has sat on a shelf.
Nothing has been done in their case.  We can give them the
application that they submitted.  Other than that, I don't know
what the administrative record is here.

        **THE COURT:**  So you would agree --

1    **MR. KURZ:**  Nothing has been done.

2    **THE COURT:**  So you agree that this plaintiff's case

3    has sat on a shelf and nothing has been done?

4    **MR. KURZ:**  Yes.  She hasn't reached the front of the

5    line.  It's not her turn yet.

6    **THE COURT:**  So nothing -- absolutely nothing has been

7    done with her case yet.  You've accepted her application.

8    **MR. KURZ:**  That's correct.  She received a notice

9    that the agency received her application, and the last time --

10   **THE COURT:**  And she got in line, and no one has

11   looked at her case since then, because she's just in the line;

12   correct?

13   **MR. KURZ:**  That's correct.

14   **THE COURT:**  All right.  So that's the administrative

15   record.  She got a letter saying she's -- her application has

16   been accepted.

17   **MR. BANIAS:**  And, Your Honor, if the government wants

18   to do dispositive motions on whether sending a notice over 39

19   months is a reasonable adjudicatory process, I guess that's

20   what we'll do, but I do think that the statement that my

21   opposing counsel makes that she gets in the back of the line is

22   we need to see that line.  If we -- we can't take their word

23   for it.

24   **THE COURT:**  So you want to see everybody that's ahead

25   of her and when their applications were filed?  Is that what

you want to see?

           MR. BANIAS:  I would imagine that the agency has some
sort of record, some sort of processing times.  We hear about
processing times.  What are those times actually measuring?
What is the process?  I think that will comprise part of the
administrative record, to show the Court whether it is
resources; whether, you know, they've gotten 50 applications
and they only have 10 adjudicators, and so every adjudicator
gets five a day, that sort of process.  If we don't see that
process at all, then I do think we take -- go back to the world
of mandamus where the statute says you make a decision, and you
give them a notice.  You give them notice of that, and if
they're fully failing to do a nondiscretionary duty, I think it
gets us out of the unreasonable delay world and back into the
mandamus claim.

           THE COURT:  Is there any written procedure for what
happens after an application is filed?  Like where does it go?
What office does it go to?  Who reviews it?  What are they
looking at, and how do they make the determinations?  Is that
in the statute or the regulation?

           MR. KURZ:  Yes, Your Honor, the statute and the
regulations clearly set out the requirements to obtain a
U visa.  That's --

           THE COURT:  I'm talking about the eligibility
requirement.

1       **MR. KURZ:**  The procedure is that the petition is sent
2   to either the Vermont service center or the Nebraska service
3   center, and apart from that, petitions are adjudicated, and
4   they start to be adjudicated in the order in which they're
5   filed, other than the exceptions that I mentioned.
6       **THE COURT:**  So how many people are doing this
7   eligibility determination?
8       **MR. KURZ:**  How many people?  I don't know how many
9   people.  I know that in August of 2016, the agency added a
10  second service center to increase the number of people
11  presumably by approximately double who are adjudicating, making
12  these U visa waiting list decisions.  All the relevant facts
13  here are before the Court.  If the Court moves us to summary
14  judgment phase, the briefs would look exactly the same.
15      **THE COURT:**  Okay.
16      **MR. BANIAS:**  And, Your Honor, I want to correct one
17  of my statements.  The application here was actually moved,
18  transferred to Nebraska from Vermont.  And so maybe we have two
19  pieces of paper in that certified administrative record.  But
20  again, what you're asking for, Your Honor, how this is being
21  processed, who's processing it, and whether this is indeed due
22  to a lack of resources or indeed due to some strict
23  chronological adjudication, that's -- that's what the
24  government's got to prove.  We can't rely on their word for it,
25  and statistics alone don't support the allegations that my

opposing counsel is making today.  Thank you, Your Honor.

**THE COURT:**  Okay.  Thank you.  All right.  Thank you very much.  I'll take it under advisement.


\* \* \* \* \* \* \* \*

**CERTIFICATE**

I, Tana J. Hess, CCR, FCRR, Official Court Reporter for the United States District Court, District of South Carolina, certify that the foregoing is a true and correct transcript, to the best of my ability and understanding, from the record of proceedings in the above-entitled matter.


Tana J. Hess, CRR, FCRR, RMR
Official Court Reporter