**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION**

| | | |
|---|---|---|
| Tomasa Romero Solis, | ) | Civil Action No: 9:18-00083-MBS |
| Heriberto Gonzalez Najera, | ) | |
| Anareli Mendiola Romero, | ) | |
| Edgar Mendiola Romero, and | ) | |
| Uan Carlos Mendiola Romero, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | **OPINION AND ORDER** |
| v. | ) | |
| | ) | |
| L. Frank Cissna, Director, United States | ) | |
| Citizenship and Immigration Services, | ) | |
| and United States Citizenship and | ) | |
| Immigration Services, | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the court on Plaintiffs Tomasa Romero Solis ("Plaintiff Solis"),

Heriberto Gonzalez Najera, Anareli Mendiola Romero, Edgar Mendiola Romero, and Uan Carlos

Mendiola Romero's (collectively, "Plaintiffs") "Rule 12(c) and 12(f) Motion" ("Motion").  ECF

No. 40.  Defendants L. Frank Cissna and United States Citizenship and Immigration Services'

("USCIS") (collectively "Defendants") filed their response in opposition to the Motion, ECF No.

41, to which Plaintiffs replied, ECF No. 42.  The court has federal question jurisdiction over this

matter pursuant to 28 U.S.C § 1331.  For the reasons explained below, the Motion is granted in

part and denied in part.

## I.    BACKGROUND

Factual Background

In 2000 Congress created the U nonimmigrant visa ("U-Visa") with the passage of the

Victims of Trafficking and Violence Protection Act.  Pub. L. No. 106–386, 114 Stat. 1464,

codified at 8 U.S.C. § 1101(a)(15)(U).  Set aside for immigrant victims of serious crimes, the U-Visa program was intended to strengthen the ability of law enforcement agencies to detect, investigate, and prosecute crimes, while also protecting the victims of those crimes. Victims of Criminal Activity: U Nonimmigrant Status, U.S. Citizenship and Immigration Services (October 9, 2018, 2:47 PM), https://www.uscis.gov/humanitarian/victims-human-trafficking-other-crimes/victims-criminal-activity-u-nonimmigrant-status/victims-criminal-activity-u-nonimmigrant-status.  In  order  for a petitioner to qualify for the U-Visa,  the Department of Homeland Security must determine that: (1) the petitioner has "suffered substantial physical or mental abuse as a result of having been a victim of criminal activity"; (2) the petitioner "possesses information concerning [the] criminal activity"; (3) the petitioner "has been, is, or is likely to be helpful" to government officials regarding the criminal activity; and (4) the criminal activity at issue "occurred in the United States." 8 U.S.C. § 1101(a)(15)(U)(i)(I-IV).  The petitioner bears the burden of establishing eligibility. 8 C.F.R. § 214.14(c)(4).

To obtain a U-Visa, the petitioner must file with USCIS a Petition for U Nonimmigrant Status (Form I-918), a biometric fee or fee waiver request, and "initial evidence" in accordance with instructions to the Form I-918.  8 C.F.R. § 214.14(c)(1).  The petitioner must also submit a Form I-918, Supplement B (U Nonimmigrant Status Certification), which is a form signed by a designated law enforcement official within six months immediately preceding the submission of petitioner's application to USCIS.  8 C.F.R. § 214.14(c)(2)(i).  This form certifies that the petitioner has been, is being, or is likely to be helpful to the investigation or prosecution of qualifying criminal activity.  8 C.F.R. § 214.14(c)(2)(i).  Furthermore, the petitioner must submit documentation that she has suffered direct or proximate harm as a result of the criminal activity; materials related to the petitioner's physical or mental abuse as a victim of the criminal activity;

information the petitioner possesses regarding the criminal activity; evidence of the petitioner's cooperation with law enforcement; evidence that the criminal activity violated United States law or occurred in the United States; and a personal statement. *See* 8 C.F.R. §§ 214.14(a)(14),(b),(c)(2).

Congress enacted a statutory cap of 10,000 U-Visas each fiscal year. 8 U.S.C. § 1184(p)(2)(A). Because of this cap, a Waiting List exists for petitioners seeking adjudication. 8 C.F.R. § 214.14(d)(2).  The Waiting List provision reads:

> All eligible petitioners who, due solely to the cap, are not granted U-1 nonimmigrant status must be placed on a waiting list and receive written notice of such placement. Priority on the waiting list will be determined by the date the petition was filed with the oldest petitions receiving the highest priority. In the next fiscal year, USCIS will issue a number to each petition on the waiting list, in the order of highest priority, providing the petitioner remains admissible and eligible for U nonimmigrant status. After U-1 nonimmigrant status has been issued to qualifying petitioners on the waiting list, any remaining U-1 nonimmigrant numbers for that fiscal year will be issued to new qualifying petitioners in the order that the petitions were properly filed. USCIS will grant deferred action or parole to U-1 petitioners and qualifying family members while the U-1 petitioners are on the waiting list. USCIS, in its discretion, may authorize employment for such petitioners and qualifying family members.

8 C.F.R. § 214.14(d)(2).

Plaintiffs are a family of Mexican nationals residing in Beaufort, South Carolina.  ECF No. 17 at ¶ 1-6.  Plaintiffs allege that Plaintiff Solis was the victim of a felonious assault after being subjected to an armed robbery in her home.  *Id.* at ¶ 29.  Plaintiff Solis is the "principal" U-Visa petitioner.  Plaintiff Solis alleges that she suffered substantial physical and mental abuse as a result of the crime; that the crime was the direct and proximate cause of such harm; that a certifying agency determined that Plaintiff Solis was the victim of a qualifying crime; a certifying agency determined that Plaintiff Solis was helpful in the investigation or prosecution of the crime; and that a certifying agency issued Plaintiff Solis a U-Visa certification.  *Id.* at ¶ 31-

3

36.  Plaintiffs claim that on February 27, 2015, Plaintiff Solis submitted a U-Visa application and applications for her family, who are qualifying relatives.  *Id.* at ¶ 37.  Plaintiffs allege that by March 3, 2015, the Vermont Service Center processed the applications and they were ready for adjudication.  *Id.* at ¶ 38.  According to Plaintiffs, since March 31, 2015, Plaintiffs' applications have been "available in records," sitting on a shelf located at "0400 – TABR_SHLF_C_13_1." *Id.* at ¶ 39.  Plaintiffs further allege that USCIS has made U-Visa Waiting List decisions on other U-Visa applications that were filed after Plaintiffs' applications.  *Id.* at ¶ 41.  Plaintiffs contend that because USCIS has adjudicated applications filed subsequent to their own, USCIS does not adjudicate U-Visa Waiting List decisions in the order in which they are received.  *Id.* ¶ 45. Therefore, Plaintiffs explain, there is no "line" with regard to the Waiting List.  *Id.* at ¶ 98. Plaintiffs assert that, "[b]ecause USCIS has made U-Visa Waiting List decisions on applications that were filed after Plaintiffs', USCIS is treating Plaintiffs differently than it treats other U-Visa applicants."  *Id.* at ¶ 55.  Plaintiffs further claim that the processing times published on USCIS's website are inaccurate, and that the delay Plaintiffs have experienced is longer than the processing time published.  *Id.* at ¶¶ 46, 47.

Procedural History

Plaintiffs initiated this action on January 9, 2018, by filing a complaint asserting the following: USCIS unreasonably delayed adjudicating Plaintiff Solis's U-Visa application in violation of the Administrative Procedure Act ("APA") 5 U.S.C. § 555(b); USCIS unlawfully failed to respond to Plaintiff Solis's Freedom of Information Act ("FOIA") request; and USCIS unreasonably delayed the initial prima facie determination on the U-Visa application, violating Plaintiffs' due process rights.  ECF No. 1.  Plaintiffs asked the court to order Defendants to (1) make a decision about whether to place the Plaintiffs on the U-Visa waiting list, and (2) produce

Plaintiffs' alien registration files under FOIA. ECF No. 1. Defendants filed a motion to dismiss, which was mooted by Plaintiffs' filing of the Amended Complaint. ECF Nos. 14, 17.

The Amended Complaint, which is the operative pleading, omitted the FOIA claim and asserted the following three claims: (1) USCIS has not met is ministerial duty to make U-Visa Waiting List decisions for eligible U-Visa Applicants, therefore, Plaintiffs are entitled to mandamus relief; (2) USCIS has unreasonably delayed adjudicating Plaintiffs' U-Visa applications in violation of the APA; and (3) USCIS has unreasonably delayed the initial prima facie determination on the U-Visa application, violating Plaintiffs' due process rights. ECF No. 17.[1]

Defendants again filed a motion to dismiss, ECF No. 18, which the parties briefed, and on which the court held a hearing. ECF No. 30. The parties filed supplemental briefs pursuant to the court's direction, ECF Nos. 31, 32, and the court thereafter held a telephonic status conference. ECF No. 34.

On August 10, 2018, the court issued an opinion and order granting the motion to dismiss as to the claims for mandamus relief and violation of procedural due process. The court denied the motion to dismiss as to the APA claim. ECF No. 35. The APA claim is therefore the sole claim remaining before the court. Defendants filed an Answer on August 24, 2018. ECF No. 37.

---

[1] Plaintiffs seek an order from the court declaring that it is unreasonable for USCIS to delay its decision to place a U-Visa petitioner on the Waiting List for thirty-seven months or longer. *Id.* at ¶ 130. Additionally, Plaintiffs seek an order from the court compelling USCIS to make decisions about whether to place U-Visa petitioners on the U-Visa Waiting List. *Id.* at ¶ 131. Plaintiffs further seek an order from the court compelling USCIS to make a decision within seven days about whether to place Plaintiffs on the Waiting List. *Id.* at ¶ 132. Plaintiffs also seek an order from the court compelling USCIS to comply with its constitutional, statutory, and regulatory obligation in making U-Visa Waiting List Decisions. *Id.* at ¶ 133. Lastly, Plaintiffs request reasonable attorney's fees and the entire cost of litigation. *Id.* at ¶ 134.

Shortly thereafter, the court entered a scheduling order, ECF No. 38, and the parties stipulated to a briefing schedule for producing the certified administrative record and filing and briefing an associated motion for summary judgment.

On September 5, 2018, Plaintiffs filed the pending Motion.  ECF No. 40.  Plaintiffs assert that in answering the Amended Complaint, Defendants denied knowledge of information that is contained in Plaintiffs' alien registration files and thus easily accessible to Defendants.  Plaintiffs argue that the court should strike those denials, pursuant to Federal Rule of Civil Procedure 12(f), or deem admitted the corresponding allegations.  Plaintiffs further argue that the court should grant them judgment on the pleadings on the basis that, "absent an individualized explanation," a forty-one month delay is arbitrary and capricious.  ECF No. 40-1 at 2.  Plaintiffs contend that even if the court denies the relief sought under Rule 12(f), it may still, and should, grant judgment on the pleadings under Federal Rule of Civil Procedure 12(c).  Defendants filed an opposition brief, ECF No. 41, to which Plaintiffs filed a reply, ECF No. 42.  The court held a telephonic hearing on the Motion on November 8, 2018.

## II.    LEGAL STANDARDS

### A.    Federal Rule of Civil Procedure 12(f)

Federal Rule of Civil Procedure 12(f) permits a court to strike from a pleading "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  The court may act on its own or on motion made by a party within twenty-one days after being served with the pleading.  In determining whether to grant a motion to strike, the court "enjoys wide discretion . . . in order to minimize delay, prejudice and confusion by narrowing the issues for discovery and trial."  *Haley Paint Co. v. E.I. du Pont de Nemours & Co.*, 279 F.R.D. 331, 336 (D. Md. 2012) (quoting *Hayne v. Green Ford Sales, Inc.,* 263 F.R.D. 647, 649 (D. Kan. 2009)).

Motions to strike are often viewed with disfavor "because striking a portion of a pleading is a drastic remedy and because it is often sought by the movant simply as a dilatory tactic." *Waste Mgmt. Holdings Inc. v. Gilmore,* 252 F.3d 316, 347 (4th Cir. 2001) (quotations omitted).  Therefore, "[w]hen reviewing a motion to strike, 'the court must view the pleading under attack in a light most favorable to the pleader.'"  *Piontek v. Serv. Ctrs. Corp.*, PJM-10-1202, 2010 WL 4449419, at *3 (D. Md. Nov. 5, 2010) (quoting *Clark v. Milam,* 152 F.R.D. 66, 71 (S.D.W.Va. 1993)).

**B.**     **Federal Rule of Civil Procedure 12(c)**

Under Rule 12(c), a party may move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial . . . ."  Fed. R. Civ. P. 12(c).  A district court, in reviewing a Rule 12(c) motion, "appl[ies] the same standard . . . as for motions made pursuant to Rule 12(b)(6)."  *Burbach Broad. Co. v. Elkins Radio Corp.*, 278 F.3d 401, 405–06 (4th Cir. 2002).  "To survive a Rule 12(b)(6) motion, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A motion for judgment on the pleadings should be granted only if "the moving party has clearly established that no material issue of fact remains to be resolved and the party is entitled to judgment as a matter of law." *Park Univ. Enters. v. Am. Cas. Co.*, 442 F.3d 1239, 1244 (10th Cir. 2006) (quoting *United States v. Any & All Radio Station Transmission Equip.*, 207 F.3d 458, 462 (8th Cir. 2000)).  In reviewing a motion for judgment on the pleadings, the court should "construe the facts and reasonable inferences . . . in the light most favorable to the [nonmoving party]."  *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997).  "Courts follow 'a fairly restrictive standard' in ruling on Rule 12(c) motions, as 'hasty or imprudent use of this summary

procedure by the courts violates the policy in favor of ensuring to each litigant a full and fair hearing on the merits of his or her claim or defense."  5C Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1368 (3d ed. 2011) (noting a motion to dismiss under Rule 12(c) is designed to "dispos[e] of cases in which there is no substantive dispute that warrants the litigants and the court proceeding further . . . .").

### III.    DISCUSSION

#### A.    Federal Rule of Civil Procedure 12(f)

In answering the Amended Complaint, Defendants were required to admit or deny the allegations asserted against it.  Fed. R. Civ. P. 8(b)(1)(B).  "A party that lacks knowledge or information sufficient to form a belief about the truth of an allegation must so state, and the statement has the effect of a denial."  Fed. R. Civ. P. 8(b)(5).  Such denial must be in good faith and reasonably based, and made only after reasonable inquiry under the circumstances.  Fed. R. Civ. P. 11(b)(4).  *See Divane v. Krull Elec. Co. Inc.*, 200 F.3d 1020, 1029 (7th Cir 1999) (affirming ruling that defendant improperly denied matters it had admitted in prior litigation).

#### 1.    Arguments

Plaintiffs argue that "USCIS claimed that it lacked knowledge or information sufficient to answer Plaintiffs' allegations even though the veracity of those allegations can be confirmed or denied by looking at documents in Plaintiff' Solis's alien registration file."  ECF No. 40-1 at 4. Plaintiffs contend that such "feigned ignorance is even more egregious here because, as part of this litigation, USCIS turned over Mrs. Solis's alien registration file to settle Plaintiffs' cause of action related to her delayed Freedom of Information Act request."  *Id.*  Plaintiffs argue that Defendants have an obligation to undertake a reasonable investigation of the allegations before

professing a lack of information or belief, and that Defendants have sufficient information to

admit or deny the following allegations:

***Allegations regarding nationality, familial relationships, residence, and financial status***:

- Plaintiff Tomasa Romero Solis is a national and citizen of Mexico. She permanently resides in Beaufort County, South Carolina, ECF No. 17 at ¶ 1;
- Plaintiff Heriberto Gonzalez Najera is a national and citizen of Mexico. He permanently resides in Beaufort County, South Carolina. He is the spouse of Plaintiff Tomasa Romero Solis, *id.* at ¶ 2;
- Plaintiff Anareli Mendiola Romero is a national and citizen of Mexico. She is the daughter of Tomasa Romero Solis, *id.* at ¶ 3;
- Plaintiff Edgar Mendiola Romero is a national and citizen of Mexico. He is the son of Plaintiff Tomasa Romero Solis, *id.* at ¶ 4;
- Plaintiff Juan Carlos Mendiola Romero is a national and citizen of Mexico. He is the son of Plaintiff Tomasa Romero Solis, *id.* at ¶ 5;
- Venue is proper in this Court under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in the District of South Carolina; Plaintiffs reside in Beaufort County, South Carolina; and Plaintiff petitioned for her immigration benefits from Charleston County, South Carolina. Further, Defendant does business in Charleston County, South Carolina, *id.* at ¶ 8;
- Plaintiffs' net worth is less than $2,000,000, and she otherwise qualifies for fees under the Equal Access to Justice Act, *id.* at ¶ 127.

***Allegations regarding a qualifying crime***:

- Mrs. Solis was the victim of felonious assault after being subjected to an armed robbery in her home, ECF No. 17 at ¶ 29;
- This [felonious assault] is a qualifying crime under the U-Visa statute, *id.* at ¶ 30;
- [Plaintiff Solis] suffered substantial physical and mental abuse as a result of this [qualifying] crime, *id.* at ¶ 31;
- The [qualifying] crime was the direct and proximate cause of such [Plaintiff Solis's] harm, *id.* at ¶ 32.

***Allegations regarding a certifying agency***:

- A certifying agency determined that Plaintiff[] [Solis] was the victim of a qualifying crime, ECF No. 17 at ¶ 33;
- A certifying agency determined that Plaintiff possessed valuable information about such [a qualifying] crime, *id.* at ¶ 34;
- A certifying agency determined that Plaintiff was helpful in the investigation or prosecution of the [qualifying] crime, *id.* at ¶ 35;
- A certifying agency issued Plaintiff a U-Visa certification, *id.* at ¶ 36.

Plaintiffs also assert that Defendants have sufficient information to admit or deny the allegations that:

- On February 27, 2015, Mrs. Solis submitted a U-Visa application and applications for her family, all of which are qualifying relatives, ECF No. 17 at ¶ 37; and
- Plaintiffs are all "eligible petitioners" for U-Visas, *id.* at ¶ 64.

In response to the Motion, Defendants argue that they lack sufficient knowledge or information to form a belief as to the above allegations.  ECF No. 41.  They argue that they cannot simply rely on the contents of Plaintiff Solis's alien registration file to admit or deny the allegations, and that USCIS will lack a sufficient basis on which to admit or deny the allegations until such time as it "investigates those allegations in the course of adjudicating Plaintiffs' petitions."  *Id.* at 2-3.[2]  Defendants elaborate as follows.

***Allegations regarding nationality, familial relationships, residence, and financial status***:

Defendants represent that USCIS "must investigate these allegations."  ECF No. 41 at 4, 6.  They assert that necessary investigatory steps may include: "(1) searching government databases and records for information about Plaintiffs' nationality, residency, and family ties; (2) confirming the authenticity of any relevant documents that Plaintiffs submitted in support of their U-visa petitions; and (3) evaluating whether those documents and other evidence prove that the allegations are true."  *Id.*  With respect to the allegations that Plaintiff Solis petitioned for her immigration benefits from Charleston County, South Carolina, ECF No. 17 at ¶ 8, and that on February 27, 2015, Mrs. Solis submitted a U-Visa application and applications for her family, ECF No. 17 at ¶ 37, Defendants argue that "[t]he only support for this allegation appears to be a

---

[2] Defendants raised as a secondary basis for failing to admit or deny that "many of the allegations at issue are not purely factual in nature, but rather implicate legal questions," and that "USCIS must evaluate those allegations under the applicable legal standards."  *Id.* at 3.

Postal Service mailing label, which may be inauthentic and thus does not provide a sufficient basis for USCIS to admit or deny the allegation."  ECF No. 41 at 4, 6.

***Allegations regarding a qualifying crime***:

Defendants represent that USCIS "must investigate these allegations."  ECF No. 41 at 4. They state that Plaintiffs "filed police reports, witness statements, medical records, and other documents," and assert that investigatory steps may include: "(1) confirming that the police reports, witness statements, and medical records are authentic; and (2) investigating whether the witnesses' statements are accurate."  *Id.* at 4-5.

***Allegations regarding a certifying agency***:

Defendants represent that USCIS "must investigate [these] allegations."  ECF No. 41 at 5.  They state that Plaintiffs "filed police reports, witness statements, medical records, and other documents," and assert that investigatory steps may include: "(1) confirming that the police reports, witness statements, and medical records are authentic; and (2) investigating whether the witnesses' statements are accurate."  *Id.*  With respect to the allegation that "[a] certifying agency issued Plaintiff a U-Visa certification," ECF No. 17 at ¶ 36, Defendants argue that USCIS must determine "(1) whether the Beaufort County Sheriff's Department meets the regulatory definition of a 'certifying agency,' 8 C.F.R. § 214.14(a)(2); and (2) whether the purported U-visa certification, Form I-918 Supplement B, is authentic and satisfies the requirements of 8 C.F.R. § 214.14(c)(2)."  *Id.*

## 2.    Findings

Rule 8 imposes the minimal burden that a party act pursuant to a reasonable basis for belief in pleading a matter.  Plaintiffs assert in reply and argued during oral argument that USCIS "confuses its duties in litigation with its duties in adjudication."  ECF No. 42 at 1.  Indeed, while

the adjudication of Plaintiff Solis's application may require USCIS to confirm the accuracy and

authenticity of assertions and documents, Rule 8 levies no such requirement.  Were the Rule

more exacting, a person would be required to first muster the information necessary to prove his

claim before he could file a lawsuit.  In recognizing the difference between the standard for

pleading and the standard represented by Defendants for adjudicating a U-Visa application, the

court finds that Defendants have a sufficient basis on which to admit or deny certain allegations.

For example, in response to Plaintiff Solis's allegation that she is a "national and citizen

of Mexico," Defendants stated they lacked sufficient knowledge or information to form a belief

about her nationality because her U-Visa petition is pending review.  ECF Nos. 17 and 37 at ¶ 1.

During oral argument, counsel for Plaintiffs represented without objection from Defendants that

Plaintiff Solis's application includes a sworn affidavit attesting to the fact that she is a Mexican

national, and further contains a photographed copy of her Mexican birth certificate.  This

information is sufficient to provide Defendants with a reasonable basis on which to admit or

deny that Plaintiff Solis is a citizen of Mexico.  *See Pacer v. Rockenbach Chevrolet Sales, Inc.*,

No. 07C5173, 2007 WL 4109291, at *1 (N.D. Ill. Nov. 19, 2007) (commenting on "the high

hurdle deliberately set by Rule 8(b)'s requirement that such a defendant really lacks even a

belief," and speculating that when the defendant "engage[s] in even a modest 'inquiry reasonable

under the circumstances' (as required by Rule 11(b)) a good many of the current nonresponses

will be converted into good faith *admissions*") (emphasis in original).  Additionally, Defendants

admit that Plaintiff Solis submitted "police reports, witness statements, [and] medical records" in

support of her assertion that she endured a qualifying crime and that the Beaufort County

Sheriff's Department is a certifying agency.  ECF No. 41 at 4, 5.  While these materials may not

suffice to confirm the accuracy and authenticity of Plaintiff Solis's claims for the purpose of

adjudicating her application, they provide a reasonable basis on which to admit or deny allegations of the same. To the extent Defendants determine during discovery or during the adjudication of Plaintiff Solis's application that any document or attestation is inauthentic or false, Defendants may seek to amend their Answer.

The court similarly finds that the investigation required to satisfy Rule 11(b) is not necessarily the same as the investigation USCIS must undertake to adjudicate Plaintiff Solis's application. The law is clear that what constitutes a reasonable investigation depends on the circumstances of the case. Fed. R. Civ. P. 11(b). At oral argument, the court first asked counsel for Defendants to describe the investigation USCIS undertook prior to asserting that it lacked sufficient belief to admit or deny the allegations. Counsel represented that USCIS had not conducted an investigation, and insisted that his clients were under no obligation to undertake any investigation because the contested allegations call for legal conclusions. Counsel acknowledged, however, that Defendants did not argue this position in response to the Motion. Indeed, the response consistently cites a lack of sufficient knowledge or information as the basis for declining to admit or deny the allegations. ECF No. 41 at 4-6.[3] Given the positions they took in the Answer and in response to the Motion, and considering the circumstances of this case, Defendants were required to undertake some form of an investigation prior to asserting lack of information or knowledge; otherwise, they had no basis on which to make such an assertion.

During oral argument the court also sought to understand the nature of the effort and resources Defendants would have to expend to acquire the facts necessary to admit or deny certain allegations. Indeed, it may be that the investigation necessary for USCIS to form a belief

---

[3] The court notes upon review of the Answer that in responding to 135 paragraphs, Defendants did not once assert that an allegation calls for a legal conclusion. *See* ECF No. 37.

13

sufficient to admit or deny certain allegations is unreasonable within the context of this lawsuit. With few exceptions, Defendants were unable to describe with any more specificity than what is contained in their response the nature of the investigation USCIS would have to undertake to adduce facts sufficient to admit or deny certain allegations.[4]  Unable to describe the contours of the investigation, Defendants could not then argue that such investigation is unreasonable at the pleading stage.

Finally, the court notes that Defendants assert in their response that they would have to first undertake a legal analysis before they could admit or deny that (1) Plaintiff Solis was the victim of a qualifying crime; (2) Beaufort County Sheriff's Department is a certifying agency; or (3) Plaintiffs are eligible petitioners for U-Visas.  ECF No. 41 at 4-6.  *See* ECF No. 17 at ¶¶ 29, 30, 33-36, 64.  Specifically, Defendants assert that they would have to determine whether the following regulatory definitions are satisfied.  A qualifying crime is defined as "one or more of the following or any similar activities in violation of Federal, State or local law:

> Rape; torture; trafficking; incest; domestic violence; sexual assault; abusive sexual contact; prostitution; sexual exploitation; female genital mutilation; being held hostage; peonage; involuntary servitude; slave trade; kidnapping; abduction; unlawful criminal restraint; false imprisonment; blackmail; extortion; manslaughter; murder; felonious assault; witness tampering; obstruction of justice; perjury; or attempt, conspiracy, or solicitation to commit any of the above mentioned crimes. The term "any similar activity" refers to criminal offenses in which the nature and elements of the offenses are substantially similar to the statutorily enumerated list of criminal activities

8 C.F.R. § 214.14(a)(9).  A certifying agency is defined as:

> a Federal, State, or local law enforcement agency, prosecutor, judge, or other authority, that has responsibility for the investigation or prosecution of a qualifying crime or criminal activity. This definition includes agencies that have

---

[4] One exception was Defendants' description of the investigation necessary to determine if the Beaufort Sheriff's Department is a certifying agency. Defendants represented that employees of USCIS would likely call the Sheriff's Department and confirm that it is a state law enforcement agency and that it had submitted the documents contained in Plaintiff Solis's application.

criminal investigative jurisdiction in their respective areas of expertise, including, but not limited to, child protective services, the Equal Employment Opportunity Commission, and the Department of Labor.

*Id.* at § 214.14(a)(2). An alien is deemed eligible for U-1 nonimmigrant status if he or she demonstrates the following:

(1) The alien has suffered substantial physical or mental abuse as a result of having been a victim of qualifying criminal activity. Whether abuse is substantial is based on a number of factors, including but not limited to: The nature of the injury inflicted or suffered; the severity of the perpetrator's conduct; the severity of the harm suffered; the duration of the infliction of the harm; and the extent to which there is permanent or serious harm to the appearance, health, or physical or mental soundness of the victim, including aggravation of pre-existing conditions . . . ;

(2) The alien possesses credible and reliable information establishing that he or she has knowledge of the details concerning the qualifying criminal activity upon which his or her petition is based. The alien must possess specific facts regarding the criminal activity leading a certifying official to determine that the petitioner has, is, or is likely to provide assistance to the investigation or prosecution of the qualifying criminal activity . . . ;

(3) The alien has been helpful, is being helpful, or is likely to be helpful to a certifying agency in the investigation or prosecution of the qualifying criminal activity upon which his or her petition is based, and since the initiation of cooperation, has not refused or failed to provide information and assistance reasonably requested . . . ; and

(4) The qualifying criminal activity occurred in the United States (including Indian country and U.S. military installations) or in the territories or possessions of the United States, or violated a U.S. federal law that provides for extraterritorial jurisdiction to prosecute the offense in a U.S. federal court.

*Id.* at § 214.14(b).

While the allegations that refer to a qualifying crime, a certifying agency, and Plaintiffs' eligibility for U-Visas call for legal conclusions in the sense that the operative terms are defined by law, the definitions themselves call for an application of facts. Keeping in mind the guidance set forth above, Defendants are instructed to consider whether they have in their possession facts sufficient to form a reasonable basis from which to determine if these definitions are satisfied,

and, if not, whether undertaking the factual investigation that Rule 11(b) requires would enable them to so determine.

For the reasons stated, Defendants are permitted leave to replead their Answer consistent with the instruction provided herein.  *See Piontek*, 2010 WL 4449419, at *3 (noting that "[g]iven the disfavored status of Rule 12(f) motions to strike . . . a defendant is ordinarily given leave to amend the answer") (citing *Cates v. Int'l Tel. & Tel. Corp.,* 756 F.2d 1161, 1180 (5th Cir. 1985)).

## B.      Federal Rule of Civil Procedure 12(c)

Plaintiffs contend that they are entitled to judgment on the pleadings regardless of whether the court deems admitted the above allegations.  Plaintiffs' sole remaining claim asserts that USCIS has unreasonably delayed adjudicating Plaintiff Solis's U-Visa application in violation of the APA.  The APA provides that, "[w]ith due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude a matter presented to it."  5 U.S.C. § 555(b).  Section 706 of the APA states that the reviewing court "shall compel agency action unlawfully withheld or unreasonably delayed."  5 U.S.C. § 706(1).  A claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take.  Norton v. S. Utah Wilderness All*., 542 U.S. 55, 64 (2004) (emphasis in original).

In assessing claims of an agency delay, and whether such a delay warrants action by the court, courts have looked to several factors for guidance as set forth in *Telecomm. Research & Action Ctr. v. FCC* (the "TRAC Factors").  750 F.2d 70 (D.C. Cir. 1984).  These factors include the following: (1) "the time agencies take to make decisions must be governed by a 'rule of reason'"; (2) "where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply

content for this rule of reason"; (3) "delays that might be reasonable in the sphere of economic

regulation are less tolerable when human health and welfare are at stake"; (4) "the court should

consider the effect of expediting delayed action on agency activities of a higher or competing

priority"; (5) "the court should also take into account the nature and extent of the interests

prejudiced by delay"; and (6) "the court need not 'find any impropriety lurking behind agency

lassitude in order to hold that agency action is unreasonably delayed.'" *Id.* at 80. *See Alkassab*

*v. Rodriguez*, No. 2:16-CV-1267-RMG, 2017 WL 1232428, at *5 (D.S.C. Apr. 3, 2017)

(applying the *TRAC* factors). The Parties agree that these factors apply here. *See* ECF No. 40-1

at 8.

        **1.    Arguments**

      Plaintiffs argue that the Amended Complaint contains sufficient uncontested material for

the court to find that the forty-one month delay in adjudicating Plaintiff Solis's application is

unreasonable. Plaintiffs cite the following allegations as supporting judgment in their favor:

- USCIS is responsible for enforcing the Immigration and Nationality Act and its attendant regulations, including but not limited to timely adjudication of I-918, Petitions for U Nonimmigrant Status, U-visa derivative applications, and U-visa collateral benefits, ECF Nos. 17 and 37 at ¶ 6;
- Plaintiffs have exhausted all administrative remedies, ECF Nos. 17 and 37 at ¶¶ 9, 10;
- Once a U-Visa applicant is placed on the U-Visa Waiting List USCIS must grant deferred action to the applicant and his or her qualifying family members: "USCIS will grant deferred action or parole to U-1 petitioners and qualifying family members while the U-1 petitioners are on the waiting list," ECF Nos. 17 and 37 at ¶ 24;
- Similarly, once a U-Visa applicant is placed on the U-Visa Waiting List, USCIS may grant work authorization to the applicant and his or her qualifying family members: "USCIS, in its discretion, may authorize employment for such petitioners and qualifying family members," ECF Nos. 17 and 37 at ¶ 25;
- Plaintiffs submitted a U Nonimmigrant Status Certification (Form I-918 Supplement B), ECF Nos. 17 and 37 at ¶¶ 33-37;
- Since February 27, 2015, USCIS has not made a decision on whether to put Plaintiffs on the Waiting List, ECF Nos. 17 and 37 at ¶ 40;

- USCIS has made U-Visa Waiting List decisions on U-Visa Applications filed after Plaintiffs' U-Visa applications, ECF Nos. 17 and 37 at ¶ 41;
- USCIS has made U-Visa Waiting List decisions for U-Visa Applicants in removal proceedings that filed their U-Visa Applications after Plaintiffs, ECF Nos. 17 and 37 at ¶ 43;
- USCIS has made U-Visa Waiting List decisions for U-Visa Applicants with final orders of removal that filed their U-Visa Applications after Plaintiffs, ECF Nos. 17 and 37 at ¶ 44;
- USCIS has a duty under the APA to take action on whether to put a U-Visa applicant and his or her qualifying family members on the U-Visa Waitlist "within a reasonable amount of time," ECF Nos. 17 and 37 at ¶ 76;
- USCIS does not make U-Visa Waiting List decisions on a first in, first out basis, ECF Nos. 17 and 37 at ¶ 79;
- There is no cap for the U-Visa Waiting List, ECF Nos. 17 and 37 at ¶ 81;
- USCIS's own processing times for U-Visa adjudications are inaccurate, and because the processing times are expressed in a range, later-filed applications get U-Visa Waiting List decisions ahead of earlier filed applications, ECF Nos. 17 and 37 at ¶ 82;
- USCIS's U-Visa Waiting List decisions impact human health and welfare, ECF Nos. 17 and 37 at ¶ 86;
- Plaintiffs are unable to acquire deferred action. Plaintiffs are, therefore, subject to detention and removal at any time, ECF Nos. 17 and 37 at ¶ 87;
- USCIS claimed that timely adjudication of U-Visa Applications is a priority, ECF Nos. 17 and 37 at ¶ 93;
- a finding that a thirty-seven-month delay in its decision to put the Plaintiffs on the U-Visa Waiting List does not require a finding of agency impropriety, ECF Nos. 17 and 37 at ¶ 103; and
- Plaintiffs' interest in a decision as to whether they should be put on the U-Visa Waiting List is significant because a decision to put the Plaintiffs on the U-Visa Waiting List accords Plaintiffs with deferred action and the right to apply for work authorization, a social security number, and a South Carolina driver's license, ECF Nos. 17 and 37 at ¶ 115.

ECF No. 40-1 at 7-8.

Plaintiffs contend these allegations demonstrate that a forty-one month delay is unreasonable, and cite the *TRAC* factors for support. With respect to the first factor, they argue there is no rule of reason because, in articulating a rule of reason, Defendants have cited exceptions that "could indefinitely delay Plaintiffs' U-Visa waiting list decision," and "[i]n reality, the government's 'rule of reason' appears to be decide whatever applications U.S. Immigration and Customs Enforcement tells us to, and then get to everyone else." ECF No. 40-1

at 9.  With respect to the second factor, Plaintiffs argue that Congress has stated, "[i]t is the sense that the processing of an immigration benefit application should be completed not later than 180 days after the initial filing of the application, except that a petition for a nonimmigrant visa under section 1184(c) of this title should be processed not later than 30 days after the filing of the petition."  *Id.* at 10 (quoting 8 U.S.C. § 1571(b)).  Plaintiffs assert that even if this statement is not binding for purposes of the *TRAC* factors, it is a "congressional indication of the speed at which the agency should act."  *Id.* (quoting *TRAC*, 750 F.2d at 80).  As to the fourth factor, Plaintiffs state that the government "has admitted timely adjudication of U-Visa applications is a priority and it has identified no USCIS priority of competing or higher value that would suffer."  *Id.* at 10-11.

Defendants respond that as an initial matter, Plaintiffs seek relief that would permit them to improperly place themselves in front of other similarly situated applicants.  Defendants assert that when the requested relief has this effect, courts rely exclusively on the fourth *TRAC* factor: "the effect of expediting delayed action on agency activities of a higher or competing priority . . . [and] the extent of the interests prejudiced by the delay."  ECF No. 41 at 7-8 ("'when a judicial order putting the petitioner at the head of the queue would simply move all others back one space and produce no net gain,' courts have relied exclusively on the fourth *TRAC* factor") (quoting *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1100 (D.C. Cir. 2003)). Defendants further assert that when the "competing priorities" factor weighs in an agency's favor, courts refuse to grant relief, even though all the other factors considered in *TRAC* favor it. *Id.* at 8 (quoting *Norton*, 336 F.3d at 1100; citing *Alkassab*, 2017 WL 1232428, at *5).

Defendants contend that the competing-priorities factor weighs in their favor.  USCIS prioritizes two types of U-Visa applications: (1) those of petitioners involved in removal

proceedings or subject to a final removal order where "approval of [the] petition would provide

an immediate basis for relief for the [petitioner]," ECF No. 37 at ¶ 79; and (2) those that are

derivative of a principal petition that is under adjudication. *Id.* Defendants argue that the

prioritization of these two types of applications is rational because: (1) when a U-Visa petitioner

is in removal proceedings or is subject to a final removal order, she faces a heightened threat of

removal that a regular petitioner, such as Plaintiff Solis, does not face; and (2) the law mandates

the derivative-petition exception. ECF No. 41 at 9 (citing 8 C.F.R. § 214.14(f)(2)). Defendants

also contend that even if the other *TRAC* factors were relevant, Plaintiffs would not be entitled to

judgment on the pleadings.[5]

### 2.    Findings

Resolution of the Motion does not require that the court determine the proper application

of the *TRAC* factors. A motion for judgment on the pleadings should be granted only if "the

moving party has clearly established that no material issue of fact remains to be resolved and the

party is entitled to judgment as a matter of law." *Park Univ. Enters.*, 442 F.3d at 1244.

However, "[t]he reasonableness of a delay in the context of an immigration application is a fact-

dependent inquiry." *Ahmed v. Holder*, 12 F. Supp. 3d 747, 759 (E.D. Pa. 2014) (citation

---

[5] Defendants argue that the second factor, whether "Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute," does not favor Plaintiffs because the relevant statute, 8 U.S.C. § 1571(b), contains "merely precatory" language. ECF No. 41 at 10. Defendants argue that the third factor, whether the delay implicates "human health and welfare" interests, does not favor Plaintiffs because "nothing in the complaint distinguishes Plaintiffs' health and welfare interests from the interests of other U-visa petitioners." *Id.* Finally, Defendants argue that the fifth factor, "the nature and extent of the interests prejudiced by delay," does not favor Plaintiffs because their interests "are indistinguishable from the interests of the U-visa petitioners whom Plaintiffs seek to jump in line," and that, "[m]oreover, Plaintiffs' interests are weaker than the interests of petitioners who are in removal proceedings or are subject to a final removal order," because, "[u]nlike Plaintiffs, such petitioners face an immediate threat of removal." *Id.* at 11.

omitted).  *See Fraga v. Smith*, 607 F. Supp. 517 522 (D. Or. 1985) ("What constitutes an

unreasonable delay in the context of immigration applications depends to a great extent on the

facts of the particular case"); *Rodriguez v. Nielsen*, 16-cv-7092-MKB, 2018 WL 4783977, at

*20-21 (E.D.N.Y. Sept. 30, 2018) (denying cross motions for summary judgment on APA claim

as premature where parties had not completed discovery on the issue of whether delay in

adjudicating the plaintiff's U-visa application was unreasonable).

Defendants assert that they operate under the following rule of reason: "USCIS starts to

adjudicate principal petitions in the order in which they are filed, subject to two well-defined,

rational exceptions."  ECF No. 41 at 10.  The Answer supports this assertion.  ECF Nos. 17 and

37 at ¶¶ 42-44, 79.  Plaintiffs argue that the stated rule of reason fails because the two exceptions

swallow the rule.  However, Plaintiffs have not provided legal authority for the court to conclude

as a matter of law that the rule of reason is invalid.[6]  And, even if such authority exists, the

argument requires a factual record that the parties have not yet developed.  The pleadings do not

demonstrate that a delay of forty-one months is unreasonable per se; therefore, Plaintiffs are not

entitled to judgment at this time.

## IV.    CONCLUSION

For these reasons, Plaintiffs' Rule 12(c) and 12(f) Motion, ECF No. 40, is granted in part

and denied in part.  Defendants shall file an amended answer on or before December 12, 2018.

**IT IS SO ORDERED.**

---

[6]  Plaintiffs cite *Aslam v. Mukasey,* 531 F. Supp. 2d 736, 745 (E.D. Va. 2008) for support that
Defendants' asserted priorities are unreasonable.  However, *Aslam* was decided on cross motions
for summary judgment, and the court found that there was no evidentiary support for the
defendants' argument that the delay was tied to national security concerns.

/s/Margaret B. Seymour_____

November 28, 2018                    Margaret B. Seymour
Charleston, South Carolina          Senior United States District Judge