**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**BEAUFORT DIVISION**

| | | |
|---|---|---|
| Tomasa Romero Solis, | ) | Civil Action No: 9:18-00083-MBS |
| Heriberto Gonzalez Najera, | ) | |
| Anareli Mendiola Romero, | ) | |
| Edgar Mendiola Romero, and | ) | |
| Uan Carlos Mendiola Romero, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | **OPINION AND ORDER** |
| v. | ) | |
| | ) | |
| L. Frank Cissna, Director, United States | ) | |
| Citizenship and Immigration Services, | ) | |
| and United States Citizenship and | ) | |
| Immigration Services, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on the motion for summary judgment filed by Plaintiffs

Tomasa Romero Solis, Heriberto Gonzalez Najera, Anareli Mendiola Romero, Edgar Mendiola

Romero, and Uan Carlos Mendiola Romero's (collectively, "Solis Plaintiffs") and the cross

motion for summary judgment filed by Defendant L. Frank Cissna, United States Citizenship

and Immigration Services' ("USCIS") ("Defendant," "USCIS," or "Agency"). The court has federal

question jurisdiction over this matter pursuant to 28 U.S.C § 1331. For the reasons explained

below, Plaintiffs' motion is granted and Defendant's motion is denied.

**BACKGROUND**

Statutory and Regulatory Framework

In 2000 Congress created the U nonimmigrant visa ("U Visa") with the passage of the

Victims of Trafficking and Violence Protection Act. Pub. L. No. 106–386, 114 Stat. 1464,

codified at 8 U.S.C. § 1101(a)(15)(U). Set aside for immigrant victims of serious crimes, the U

Visa program was intended to strengthen the ability of law enforcement agencies to detect, investigate, and prosecute crimes, while also protecting the victims of those crimes. Victims of Criminal Activity: U Nonimmigrant Status, U.S. Citizenship and Immigration Services (July 1, 2019, 3:29 PM), https://www.uscis.gov/humanitarian/victims-human-trafficking-other-crimes/victims-criminal-activity-u-nonimmigrant-status/victims-criminal-activity-u-nonimmigrant-status.  In order for a petitioner to qualify for a U Visa, the Department of Homeland Security must determine that: (1) the petitioner has "suffered substantial physical or mental abuse as a result of having been a victim of criminal activity"; (2) the petitioner "possesses information concerning [the] criminal activity"; (3) the petitioner "has been, is, or is likely to be helpful" to government officials regarding the criminal activity; and (4) the criminal activity at issue "occurred in the United States." 8 U.S.C. § 1101(a)(15)(U)(i)(I-IV).  A "principal" petitioner may file one or more "derivative" petitions on behalf of certain family members. 8 U.S.C. § 1101(a)(15)(U)(ii); 8 C.F.R. § 214.14(f)(2).  A petitioner must be admissible to the United States or obtain a waiver of inadmissibility.  8 U.S.C. § 1182(a); 8 C.F.R. § 214.1(a)(3)(i). The petitioner bears the burden of establishing eligibility. 8 C.F.R. § 214.14(c)(4).

In 2002, Congress created USCIS and assigned it the following functions: (1) adjudications of immigrant visa petitions; (2) adjudications of naturalization petitions; (3) adjudications of asylum and refugee applications; (4) adjudications performed at service centers; and (5) "all other adjudications performed by the Immigration and Naturalization Service immediately before the effective date specified in section 455."  Homeland Security Act of 2002, Pub. L. No. 107–296, 116 Stat 2135 (2002).

To obtain a U Visa, the petitioner must file with USCIS a Petition for U Nonimmigrant Status (Form I-918), a biometric fee or fee waiver request, and "initial evidence" in accordance with instructions to the Form I-918. 8 C.F.R. § 214.14(c)(1). The petitioner must also submit a Form I-918, Supplement B (U Nonimmigrant Status Certification), which is a form signed by a designated law enforcement official within six months immediately preceding the submission of petitioner's application to USCIS. 8 C.F.R. § 214.14(c)(2)(i). This form certifies that the petitioner has been, is being, or is likely to be helpful to the investigation or prosecution of qualifying criminal activity. 8 C.F.R. § 214.14(c)(2)(i). Furthermore, the petitioner must submit documentation that she has suffered direct or proximate harm as a result of the criminal activity; materials related to the petitioner's physical or mental abuse as a victim of the criminal activity; information the petitioner possesses regarding the criminal activity; evidence of the petitioner's cooperation with law enforcement; evidence that the criminal activity violated United States law or occurred in the United States; and a personal statement. *See* 8 C.F.R. §§ 214.14(a)(14),(b),(c)(2). Congress enacted a statutory cap of 10,000 U Visas each fiscal year. 8 U.S.C. § 1184(p)(2)(A).

On October 17, 2007, USCIS published a rule creating a regulatory waiting list procedure to accommodate meritorious U Visa petitions that exceed the annual statutory cap. 8 C.F.R. § 214.14(d)(2). The waiting list provision reads:

> All eligible petitioners who, due solely to the cap, are not granted U-1 nonimmigrant status must be placed on a waiting list and receive written notice of such placement. Priority on the waiting list will be determined by the date the petition was filed with the oldest petitions receiving the highest priority. In the next fiscal year, USCIS will issue a number to each petition on the waiting list, in the order of highest priority, providing the petitioner remains admissible and eligible for U nonimmigrant status. After U-1 nonimmigrant status has been issued to qualifying petitioners on the waiting list, any remaining U-1 nonimmigrant numbers for that fiscal year will be issued to new qualifying petitioners in the order that the petitions were properly filed. USCIS will grant

deferred action or parole to U-1 petitioners and qualifying family members while the U-1 petitioners are on the waiting list. USCIS, in its discretion, may authorize employment for such petitioners and qualifying family members.

8 C.F.R. § 214.14(d)(2).

On December 23, 2008, Congress enacted the William Wilberforce Trafficking Victims Protection Reauthorization Act (the "TVPRA"), Pub. L. 110-457, 122 Stat. 5044. The TVPRA specifies that the "Secretary [of DHS] may grant work authorization to any alien who has a pending, bona fide application for nonimmigrant status under section 1101(a)(15)(U) of this title." 8 U.S.C. § 1184(p)(6). The employment authorization document ("EAD") allows U Visa applicants to seek lawful employment while they await adjudication of their petitions.

Up until January 2017, the regulation governing authorization of employment provided that "USCIS will adjudicate the [EAD] application within 90 days from the date of receipt of the application," and additionally that "[f]ailure to complete the adjudication within 90 days will result in the grant of an employment authorization document for a period not to exceed 240 days." 8 C.F.R. § 274a.13(d).[1] *See* ECF No. 65-1 at 5. The U status application form allows for U status principal applicants to request work authorization on the same form used to request U status. This one-step process comported with the rationale in the contemporaneous rulemaking:

> For principal aliens seeking their first [work authorization] based upon U nonimmigrant status, USCIS will use the information contained in the Form I-918 to automatically generate [work authorization], such that a separate request for [work authorization] is not necessary . . . . USCIS has designed the Form I-918 so that it serves the dual purpose of requesting U nonimmigrant status and employment authorization to streamline the application process. Therefore, principal aliens will not have to file additional paperwork to obtain an initial [work authorization].

---

[1] A revised version of section 274a.13(d) went into effect on January 17, 2017. *See* "Retention of EB-1, EB-2, and EB-3 Immigrant Workers and Program Improvements Affecting High-Skilled Nonimmigrant Workers," 81 Fed. Reg. 82398 (Nov. 18, 2016). Unless otherwise noted, the court refers to former 8 C.F.R. § 274a.13(d) as "section 274a.13(d)," because the former version was the regulation in effect at the time Plaintiffs filed their petitions.

New Classification for Victims of Criminal Activity; Eligibility for "U" Nonimmigrant Status,

72 Fed. Reg. 53,014 (Sep. 17, 2007). *See* ECF No. 65-1 at 4. USCIS also updated the

instructions for work authorization applications to take into account the one-step process for

requesting work authorization. *See* ECF No. 66-1. Those instructions stated:

> **K. U-1 Nonimmigrant—(a)(19).** If you are applying for initial employment
> authorization as a U-1 nonimmigrant, file Form I-765 only if you did not request
> an employment authorization document when you applied for U nonimmigrant
> status. If you have been granted U nonimmigrant status and this is a request for a
> renewal or replacement of an employment authorization document, file Form I-
> 765 along with evidence of your U nonimmigrant status, such as an approval
> notice.

*Id.* at 6. *See* ECF No. 65-1 at 5.

Procedural History

The Solis Plaintiffs initiated this action on January 9, 2018, by filing a complaint

asserting the following: USCIS unreasonably delayed adjudicating Plaintiff Tomasa Romero

Solis's ("Plaintiff Solis") U Visa application in violation of the Administrative Procedure Act

("APA") 5 U.S.C. § 555(b); USCIS unlawfully failed to respond to Plaintiff Solis's Freedom of

Information Act ("FOIA") request; and USCIS unreasonably delayed the initial prima facie

determination on the U Visa application, violating Plaintiffs' due process rights. ECF No. 1.

Plaintiffs in eight similar cases filed substantively identical complaints.[2] Plaintiffs in all nine

cases ("Plaintiffs") asked the court to order Defendant to (1) make a decision about whether to

place the Plaintiffs on the U Visa waiting list, and (2) produce Plaintiffs' alien registration files

---

[2] Those cases are styled as follows: *Perez v. Cissna*, No. 2:18-cv-0069 (D.S.C. Jun. 12, 2019);
*Lopez v. Cissna*, No. 2:18-cv-0071 (D.S.C. Jun. 12, 2019); *Mata v. Cissna*, No. 2:18-cv-0073
(D.S.C. Jun. 12, 2019); *Santiago v. Cissna*, No. 2:18-cv-0074 (D.S.C. Jun. 12, 2019); *Gutierrez
v. Cissna*, No. 2:18-cv-0076 (D.S.C. Jun. 12, 2019); *Martinez v. Cissna*, No. 2:18-cv-0077
(D.S.C. Jun. 12, 2019); *Berduo v. Cissna*, No. 9:18-cv-0082 (D.S.C. Jun. 12, 2019); and *Urias v.
Cissna*, No. 9:18-cv-0093 (D.S.C. Jun. 12, 2019).

under FOIA.  ECF No. 1.  Defendant filed a motion to dismiss, which was mooted by the Solis

Plaintiffs' filing of the amended complaint.  ECF Nos. 14, 17.

The amended complaint, which is the operative pleading, omitted the FOIA claim and

asserted the following three claims: (1) USCIS has not met its ministerial duty to make U Visa

waiting list decisions for eligible U Visa Applicants, therefore, Plaintiffs are entitled to

mandamus relief; (2) USCIS has unreasonably delayed adjudicating Plaintiffs' U Visa

applications in violation of the APA; and (3) USCIS has unreasonably delayed the initial prima

facie determination on the U Visa application, violating Plaintiffs' due process rights.  ECF No.

17.[3]

Defendant again filed a motion to dismiss, ECF No. 18, which the Parties briefed, and on

which the court held a hearing, ECF No. 30.  The Parties filed supplemental briefs pursuant to

the court's direction, ECF Nos. 31, 32, and the court thereafter held a telephonic status

conference.  ECF No. 34.  On August 10, 2018, the court issued an opinion and order granting

the motion to dismiss as to the claims for mandamus relief and violation of procedural due

process.  The court denied the motion to dismiss as to the APA claim.  ECF No. 35.  The APA

claim is therefore the sole claim remaining before the court.  Shortly thereafter, Defendant filed

an answer, ECF No. 37, the court entered a scheduling order, ECF No. 38, and the Parties

---

[3] Plaintiffs seek an order from the court declaring that it is unreasonable for USCIS to delay its
decision to place a U Visa petitioner on the waiting list for 37 months or longer.  *Id.* at ¶ 130.
Additionally, Plaintiffs seek an order from the court compelling USCIS to make decisions about
whether to place U Visa petitioners on the U Visa waiting list.  *Id.* at ¶ 131.  Plaintiffs further
seek an order from the court compelling USCIS to make a decision within seven days about
whether to place Plaintiffs on the waiting list.  *Id.* at ¶ 132.  Plaintiffs also seek an order from the
court compelling USCIS to comply with its constitutional, statutory, and regulatory obligation in
making U Visa waiting list decisions. *Id.* at ¶ 133.  Lastly, Plaintiffs request reasonable
attorney's fees and the entire cost of litigation.  *Id.* at ¶ 134.

stipulated to a briefing schedule for producing the certified administrative record and filing and briefing an associated motion for summary judgment.

On September 5, 2018, the Solis Plaintiffs filed a combined motion for judgment on the pleadings and motion to strike parts of Defendant's answer, ECF No. 40, which the parties briefed, and on which the court held a hearing, ECF No. 49. Defendant also filed a motion to consolidate this action with the other eight cases pending before this court. ECF No. 47. Plaintiffs stipulated to the motion to consolidate, ECF No. 50, and the court granted the motion on December 4, 2018, ECF No. 57.[4] On November 28, 2018, the court issued an opinion and order denying the motion for judgment on the pleadings and granting in part and denying in part the motion to strike, granting Defendant leave to replead its answer. ECF No. 52. Defendant filed its amended answer on December 11, 2018. ECF No. 59.

The Solis Plaintiffs filed their motion for summary judgment on December 21, 2018. ECF Nos. 65, 66. Defendant filed its response and cross motion for summary judgment on February 22, 2019. ECF No. 77. The Solis Plaintiffs filed their joint reply in support of summary judgment and response to Defendant's motion on March 8, 2019, ECF No. 78, and Defendant filed its reply on March 22, 2019, ECF No. 79.[5] The Solis Plaintiffs seek two forms of relief: an order compelling Defendant to issue work authorization immediately under 8 U.S.C. § 1184(p)(6); and an order compelling Defendant to render a decision within 30 days on their

---

[4] In consolidating the cases, the court expressly acknowledged that counsel for Plaintiffs, Bradley Banias, has not represented and would not be representing any plaintiff in the matter of *Urias v. Cissna*, No. 9:18-cv-93. Plaintiffs in that matter were and continue to be represented by Mr. Banias's co-counsel Stephanie Nodine.

[5] Due to the lapse in appropriations caused by the shutdown of the federal government in December 2018 and January 2019, the court granted the Parties' motion to stay the briefing schedule on the motions for summary judgment and, on January 30, 2019, granted the Parties' joint motion to amend the briefing schedule and lift the stay. ECF Nos. 73, 75.

eligibility to be placed on the waiting list.  ECF No. 65-1 at 2.  Defendant seeks summary judgment in its favor that the delay in adjudicating Plaintiffs' petitions is reasonable.

## LEGAL STANDARD

Summary judgment is appropriate when the materials in the record show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and a fact is material if it "might affect the outcome of the suit under the governing law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Rule 56(c) provides guidance on how parties to an action shall reference the evidence of record to show that a fact cannot be or alternatively is genuinely disputed.  Fed. R. Civ. P. 56(c).  However, in a case arising under the APA, "the ordinary summary judgment standard under Rule 56(c) [] does not apply."  *Hyatt v. U.S. Patent & Trademark Office*, 146 F. Supp. 3d 771, 780 (E.D. Va. 2015).  In an action asserting unreasonable delay, such as here, summary judgment "serves as the mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record and otherwise consistent with the APA." *Id.* (quoting *Sierra Club v. Mainella*, 459 F. Supp. 2d 76, 90 (D.D.C. 2006)).

## UNDISPUTED FACTS

The following facts are material to the disposition of the motions for summary judgment and are not disputed.

Individual Plaintiffs

Plaintiff Solis is a national and citizen of Mexico.  Stipulated Record ("SR") at 0020, 0036, 0037, 0039, 0089, 0093.[6]  On March 2, 2015, Plaintiff Solis filed an I-918, Petition for U Nonimmigrant Status ("I-918 Petition").  SR at 0106, 0113.  In her I-918 Petition, Plaintiff Solis requested work authorization.  SR at 0021.  Plaintiff Solis concurrently filed an I-918 Supplement A Petition for Qualifying Family Member of U–1 Recipient ("Supplement A Petition") for her husband, Heriberto Gonzalez Najera.  SR at 0116.  The same day, Heriberto Gonzalez Najera filed an I-765 Application for Employment Authorization.  SR at 0149.  Also on March 2, 2015, Plaintiff Solis filed Supplement A Petitions for her children Anareli Mendiola Romero, SR at 0170, Edgar Mendiola Romero, SR at 0186, and Juan Carlos Mendiola Romero, SR at 0202.  On March 6, 2015, USCIS determined Plaintiff Solis's I-918 Petition was complete and sent a notice of receipt to Plaintiff Solis's attorney of record.  SR at 0106.  As of the date Plaintiffs filed their motion for summary judgment, USCIS had taken no adjudicatory action on the principal or supplemental petitions, which had then been pending for three years and nine months, or 45 months.  In March 2019, USCIS issued requests for evidence to Plaintiffs Solis and Heriberto Gonzalez Najera.  ECF No. 79 at 7 n.4.  ECF Nos. 79-4, 79-5.

Plaintiff Aldemira Morales Perez is a national and citizen of Mexico.  On September 25, 2015, Plaintiff Perez filed an I-918 Petition, in which she sought work authorization.  ECF No. 66 at ¶ 15.[7]  Plaintiff Perez concurrently filed a Supplement A Petition for her husband, Leobardo Roblero Gonzalez.  *Id.* at ¶ 17.  The same day, Leobardo Roblero Gonzalez filed an I-

---

[6] Pursuant to the Parties' stipulation, the Stipulated Record was submitted directly to chambers under seal and is not available on the docket.
[7] The Solis Plaintiffs' motion for summary judgment does not reference the Administrative Record with respect to facts surrounding the applications of the other Plaintiffs, but Defendants do not dispute the Solis Plaintiffs' recitation of those facts.

765 Application for Employment Authorization. *Id.* at ¶ 18. Also on September 25, 2015,

Plaintiff Perez filed Supplement A Petitions for her children Osmar Roblero Morales, Dulce

Maria Roblero Morales, Exal Eduardo Roblero Morales, and Rita Edali Roblero Morales. *Id.* at

¶¶ 19-22. On September 28, 2015, USCIS determined Plaintiff Perez's I-918 Petition was

complete and sent a notice of receipt to Plaintiff Perez's attorney of record. *Id.* at ¶ 16. USCIS

has since taken no adjudicatory action on the principal or supplemental petitions, which had been

pending for three years and three months, or 39 months, as of the date the Solis Plaintiffs filed

their motion for summary judgment. *Id.* at ¶¶ 23-24.

      Plaintiff Adrian Hernandez Lopez is a national and citizen of Mexico. On November 15,

2015, Plaintiff Lopez filed an I-918 Petition, in which he sought work authorization. ECF No.

66 at ¶¶ 27-28. Plaintiff Lopez concurrently filed a Supplement A Petition for his wife, Adela

Morales Gonzalez. *Id.* at ¶ 30. That same day, Adela Morales Gonzalez filed an I-765

Application for Employment Authorization. *Id.* at ¶ 31. On November 13, 2015, USCIS

determined Plaintiff Lopez's I-918 Petition was complete and sent a notice of receipt to Plaintiff

Lopez's attorney of record. *Id.* at ¶ 29. USCIS has since taken no adjudicatory action on the

principal or supplemental petitions, which had been pending for three years and one month, or 37

months, as of the date the Solis Plaintiffs filed their motion for summary judgment. *Id.* at ¶¶ 32-

33.

      Plaintiff Andrea Pioquinto Mata is a national and citizen of Mexico. On October 23,

2015, Plaintiff Mata filed an I-918 Petition, in which she sought work authorization. ECF No. 66

at ¶¶ 36-37. On October 26, 2015, USCIS determined Plaintiff Mata's I-918 Petition was

complete and sent a notice of receipt to Plaintiff Mata's attorney of record. *Id.* at ¶ 38. USCIS

has since taken no adjudicatory action on Plaintiff Mata's petition, which had been pending for

three years and one month, or 37 months, as of the date the Solis Plaintiffs filed their motion for summary judgment. *Id.* at ¶¶ 39-40.

Plaintiff Catalina Aurelia Garcia Santiago is a national and citizen of Mexico. On January 12, 2015, Plaintiff Santiago filed an I-918 Petition, in which she sought work authorization. ECF No. 66 at ¶¶ 43-44. Plaintiff Santiago concurrently filed a Supplement A Petition for her husband, Vinicio Alberto Perez Gutierrez. *Id.* at ¶ 46. That same day, Vinicio Alberto Perez Gutierrez filed an I-765 Application for Employment Authorization. *Id.* at ¶ 47. On January 13, 2015, USCIS determined Plaintiff Santiago's I-918 Petition was complete and sent a notice of receipt to Plaintiff Santiago's attorney of record. *Id.* at ¶ 45. As of the date the Solis Plaintiffs filed their motion for summary judgment USCIS had taken no adjudicatory action on the principal or supplemental petitions, which had been pending for three years and eleven months, or 47 months. *Id.* at ¶¶ 48-49. In March 2019, USCIS notified Plaintiffs Santiago and Vinicio Alberto Perez Gutierrez that they are eligible to be placed on the waiting list. ECF No. 79 at 7 n.4; ECF Nos. 79-1, 79-2.

Plaintiff Francisco Eusebio Perez Gutierrez is a national and citizen of Mexico. On November 9, 2015, Plaintiff Gutierrez filed an I-918 Petition, in which he sought work authorization. ECF No. 66 at ¶¶ 52-53. On November 12, 2015, USCIS determined Plaintiff Gutierrez's I-918 Petition was complete and sent a notice of receipt to Plaintiff Gutierrez's attorney of record. *Id.* at ¶ 54. USCIS has since taken no adjudicatory action on Plaintiff Gutierrez's petition, which had been pending for three years and one month, or 37 months, as of the date the Solis Plaintiffs filed their motion for summary judgment. *Id.* at ¶¶ 55-56.

Plaintiff Maria de Jesus Solano Martinez is a national and citizen of Mexico. On June 8, 2015, Plaintiff Martinez filed an I-918 Petition, in which she sought work authorization. ECF

No. 66 at ¶¶ 59-60.  On June 10, 2015, USCIS determined Plaintiff Martinez's I-918 Petition was complete and sent a notice of receipt to Plaintiff Martinez's attorney of record.  *Id.* at ¶ 61. USCIS has since taken no adjudicatory action on Plaintiff Martinez's petition, which had been pending for three years and six months, or 42 months, as of the date the Solis Plaintiffs filed their motion for summary judgment.  *Id.* at ¶¶ 62-63.

Plaintiff Lorena Imelda Roblero Berduo is a national and citizen of Mexico.  On May 18, 2015, Plaintiff Berduo filed an I-918 Petition, in which she sought work authorization.  ECF No. 66 at ¶¶ 66-67.  On May 20, 2015, USCIS determined Plaintiff Berduo's I-918 Petition was complete and sent a notice of receipt to Plaintiff Berduo's attorney of record.  *Id.* at ¶ 68.  USCIS has since taken no adjudicatory action on Plaintiff Berduo's petition, which had been pending for three years and seven months, or 43 months, as of the date the Solis Plaintiffs filed their motion for summary judgment.  *Id.* at ¶¶ 69-70.

Plaintiff Evelia Barrientos Urias is a national and citizen of Mexico.  On March 2, 2015, Plaintiff Urias filed an I-918 Petition, in which she sought work authorization.  ECF No. 66 at ¶¶ 73-74.  Plaintiff Urias concurrently filed a Supplement A Petition for her husband, Gilberto Garcia Uriostegui.  *Id.* at ¶ 76.  That same day, Gilberto Garcia Uriostegui filed an I-765 Application for Employment Authorization.  *Id.* at ¶ 77.  On March 4, 2015, USCIS determined Plaintiff Urias's I-918 Petition was complete and sent a notice of receipt to Plaintiff Urias's attorney of record.  *Id.* at ¶ 75.  USCIS has since taken no adjudicatory action on Plaintiff Urias's petition, which had been pending for three years and nine months, or 45 months, as of the date the Solis Plaintiffs filed their motion for summary judgment.  *Id.* at ¶¶ 78-79.  In March 2019, USCIS issued a request for evidence to Plaintiff Urias.  ECF No. 79 at 7 n.4.  ECF No. 79-3.

There is no dispute regarding the contents of Plaintiffs' petitions.

<u>USCIS's Allocation of Resources</u>

In 2017, the last reported fiscal year, USCIS's operating budget was $4,179,364. Dept. of Homeland Security, FY 2019 Budget in Brief at 70. Congressional appropriations accounted for only 2.85 percent of the budget ($119,139,000) and USCIS generated the remaining 97.15 percent of its budget by charging fees for certain benefit applications. *Id.* In setting fees, USCIS balances its mission of administering benefits against the need to "maintain[] the public's access to [its] programs." USCIS, Strategic Plan for FY 2017-2021 at iv (November 16, 2016).

**DISCUSSION**

The APA provides that, "[w]ith due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude a matter presented to it." 5 U.S.C. § 555(b). Section 706 of the APA states that the reviewing court "shall compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). A claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take. Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004) (emphasis in original).

The Parties agree that judicial review of the Agency's inaction is limited to the administrative record. ECF No. 65-1 at 9; ECF No. 77 at 11. *See Pres. Endangered Areas of Cobb's History, Inc. v. U.S. Army Corps of Engineers*, 87 F.3d 1242, 1246 (11th Cir. 1996); *Florida Power & Light Co. v. Lorion,* 470 U.S. 729, 744 (1985) (instructing that the court is tasked with deciding, "on the basis of the record the agency provides, whether the action passes muster under the appropriate APA standard of review."). The Parties further stipulated that the Administrative Record here would be comprised of Plaintiffs' U Visa petitions, a declaration signed by a USCIS declarant, and the declarant's deposition testimony.

13

The court first addresses Plaintiffs' contention that they are entitled to EADs, and then addresses the sufficiency of the Administrative Record and the reasonableness of the delay.

A.    **Employment Authorization**

Plaintiffs argue that they are entitled to EADs under 8 U.S.C. § 1184(p)(6) and 8 C.F.R. § 274a.13(d) because their petitions have been pending well over 90 days and their applications are bona fide.  ECF No. 65-1 at 7.  Defendant argues that the court should not consider Plaintiffs' request for this relief because Plaintiffs failed to plead the issue in their amended complaint and thereafter failed to move to amend their pleading.  ECF No. 77 at 11.  Defendant asks that the court afford it an opportunity to address the issue on its merits should the court be inclined to consider Plaintiffs' request.  *Id.* at 11 n.4.

In reply, Plaintiffs assert that they were unable to confirm prior to reviewing the Administrative Record in December 2018 that each principal applicant for U Visa status had requested work authorization on the I-918 form.  ECF No. 78 at 2.  Plaintiffs explain that while they had "the benefit of their Freedom of Information Act requests, [Defendant] disputed in [the] answers whether and how the Plaintiffs had filed for work authorization."  *Id.* at 2-3.  Plaintiffs assert that only "[u]pon production of the record," could they see that, "in addition to a delay of their waiting list decisions, the Agency had unreasonably delayed their requests for work authorization . . . ."  *Id.* at 3.  Plaintiffs contend that because they "could not make these claims until the records were produced, they are properly part of the motion for summary judgment."  *Id.*  Plaintiffs further contend that the court should not allow Defendant "an extra opportunity to brief this issue."  *Id.*

Defendant argues in its reply that the "'principal applicant for each U-visa application' is a Plaintiff in this case and likely knew all along that he or she checked the work-authorization

box on the Form I-918." ECF No. 79 at 3. Defendant contends that, "[e]ven if Plaintiffs forgot

that they checked the work-authorization box, they learned that fact before they filed the

amended complaint." *Id.* Defendant asserts that in February 2018, USCIS produced documents

in response to Plaintiffs' FOIA requests, and that those documents "included the same Forms I-

918 that appear in the administrative records (the Forms I-918 that Plaintiffs filed in 2015)," and,

therefore, the administrative records did not provide Plaintiffs with any new information. *Id.*

Finally, Defendant reasserts its request for an opportunity to brief the issue on the merits and

cites to a "neighboring court [that] recently held that it lacked subject-matter jurisdiction over a

similar claim." *Id.* (citing *Gonzalez v. Cissna*, 364 F. Supp. 3d 579 (E.D.N.C. 2019), *appeal*

*docketed*, No. 19-1435 (4th Cir. Apr. 23, 2019)).[8]

### 1. Newly Raised Claim for Relief

Defendant is correct that the amended complaint "makes no reference to § 1184(p)(6),"

and that "Plaintiffs' 'prayer for relief' says nothing about work authorization." ECF No. 77 at

11. However, the amended complaint asks the court to order USCIS "to make a decision about

whether to place Plaintiffs on the U-Visa Waiting List . . . .," ECF No. 17 at 16, and it is

undisputed that Defendant may grant U Visa petitioners work authorization upon their placement

on the waiting list, 8 C.F.R. § 214.14(d)(2); ECF No. 17 at ¶ 25; ECF No. 59 at ¶ 25.

Furthermore, Plaintiffs assert that an aspect of the harm that has been caused by Defendant's

delay is the resultant inability of Plaintiffs to apply for work authorization. *See, e.g.,* ECF No. 17

at ¶¶ 59, 69, 102. Accordingly, the court finds that Defendant was on notice that with this

lawsuit Plaintiffs seek work authorization. The court also finds based on its review of the

---

[8] The court notes that Defendant has not heretofore raised the issue of the court's subject matter
jurisdiction; and, to the extent Defendant raises the issue now, it appears limited to Plaintiffs'
request for EADs.

Parties' arguments and its familiarity with this case that Defendant will not suffer any prejudice from the court considering the request for EADs. Indeed, the Parties have sufficiently outlined in their respective briefs on summary judgment the nature of their arguments in favor of and against the request. Accordingly, the court will consider Plaintiffs' request for EADs without further briefing on the issue.

In *Gonzalez*, the case USCIS cites, the plaintiffs sought *inter alia* a writ of mandamus to compel USCIS to adjudicate their work authorization requests under 8 U.S.C. § 1184(p)(6); they also sought APA review of USCIS's delay in adjudicating their petition for U Visa status and work authorization. In granting the defendants' motion to dismiss for lack of subject matter jurisdiction, the court considered in relevant part the language of 8 U.S.C. § 1252(a)(2)(B):

> Notwithstanding any other provision of law (statutory or nonstatutory) . . . and except as provided in subparagraph (D), and regardless of whether the judgment, decision, or action is made in removal proceedings, no court shall have jurisdiction to review—
>
> (i) any judgment regarding the granting of relief under section 1182(h), 1182(i), 1229b, 1229c, or 1255 [adjustment of status] . . ., or
>
> (ii) any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be *in the discretion* of the Attorney General or the Secretary of Homeland Security, other than the granting of relief under section 1158(a) of this title.

8 U.S.C. § 1252(a)(2)(B)(i),(ii) (emphasis added). The court relied on the language in section 1184(p)(6), that "[USCIS] *may* grant work authorization to any alien who has a pending, bona fide application for nonimmigrant status," to find that USCIS acts within its discretion when it grants requests for work authorization. *Gonzalez*, 364 F. Supp. 3d at 584 (emphasis added). Explaining that under the APA, a court cannot engage in judicial review of agency action if that action is committed by law to agency discretion, the *Gonzalez* court determined that it was without jurisdiction to review USCIS's failure to grant or otherwise adjudicate the plaintiffs'

16

request for work authorization.  *Id.* (citing 5 U.S.C. § 701(a)(2); 8 U.S.C. § 1252(a)(2)(B)(ii)

(prohibiting courts from undergoing review of "any . . . decision or action of the Attorney

General or the Secretary of Homeland Security the authority for which is specified under this

subchapter to be in the discretion of the Attorney General or the Secretary of Homeland

Security").  *See Safadi v. Howard*, 466 F. Supp. 2d 696, 698 (E.D. Va. 2006) (finding that 8

U.S.C. § 1252(a)(2)(B)(ii) precluded the court from reviewing "the pace of USCIS's processing

and adjudication of an adjustment application," which had been pending for four years).

However, in reaching its conclusion, the *Gonzalez* court did not discuss or reference 8

C.F.R. § 274a.13(d), which provides that USCIS "*will* adjudicate the [EAD] application within

90 days from the date of receipt of the application," and additionally that "[f]ailure to complete

the adjudication within 90 days will result in the grant of an employment authorization document

for a period not to exceed 240 days."  8 C.F.R. § 274a.13(d) (emphasis added).  *Cf. Rodriguez v.*

*Nielsen*, 16-cv-7092-MKB, 2018 WL 4783977, at *11-12 (E.D.N.Y. Sep. 30, 2018) (disagreeing

with the defendants that adjudications pursuant to 8 U.S.C. § 1184(p)(6) are discretionary and

concluding that USCIS must adjudicate eligibility for an EAD within the time period set forth in

section 274a.13(d)) (citing in part *Nigmadzhanov v. Mueller*, 550 F. Supp. 2d 540, 546 (S.D.N.Y.

2008) ("Of course, the Attorney General has unfettered (and hence, unreviewable) discretion

whether *to grant or deny* an application. However, one cannot infer from that the existence of

discretion *to never decide it at all.*") (citing *Kim v. Ashcroft*, 340 F. Supp. 2d at 384, 389

(S.D.N.Y. 2004)).

This court finds as persuasive the analysis undertaken in *Aslam v. Mukasey*, 531 F. Supp.

2d 736, 739-40 (E.D. Va. 2008).  The *Aslam* court reviewed a plaintiff's request for APA relief

regarding his petition for adjustment of status under 8 U.S.C. § 1255(a).  As with 8 U.S.C. §

1184(p)(6), section 1255(a) provides that the Attorney General *may* take action as described in

the statute.  In ruling on the parties' cross motions for summary judgment, the *Aslam* court

rejected the argument that 8 U.S.C. § 1252(a)(2)(B)(ii) strips the court of jurisdiction, explaining

that "[a]lthough the [Immigration and Nationality Act] places the decision of whether to adjust

status in the sound discretion of the Secretary, it says nothing about the Secretary's discretion to

set the pace of that decision."  *Aslam*, 531 F. Supp. 2d at 740 (citing *Khan v. Att'y Gen.,* 448 F.3d

226, 232 (3d Cir. 2006) ("The key to § 1252(a)(2)(B)(ii) lies in its requirement that the discretion

giving rise to the jurisdictional bar must be 'specified' by statute")); *Ahmed v. Gonzales*, 447

F.3d 433, 436 (5th Cir. 2006) (same); *Spencer Enter., Inc. v. United States,* 345 F.3d 683, 689

(9th Cir. 2003) (same)).  The *Aslam* court found further support for its conclusion in the fact that

the plaintiff's objective, to compel a decision rather than frustrate a denial of discretionary relief,

was not at odds with the legislative history underlying the statute.  *Id.*  The *Aslam* court noted the

presence of conflicting authority within its district but observed that "a majority of the district

courts addressing the issue have found jurisdiction."  *Id.* at 740 nn.3 & 4 (distinguishing *Safadi*,

466 F. Supp. 2d at 696 and collecting cases).

This court finds that it has jurisdiction to review USCIS's failure to adjudicate Plaintiffs'

eligibility for work authorization.  First, section 1184(p)(6) contains no language specifying

USCIS's use of discretion regarding the timing of granting an EAD.  *See Alaka v. Attorney Gen.*,

456 F.3d 88, 95 (3d Cir. 2006) (holding that "the jurisdiction stripping language of §

1252(a)(2)(B)(ii) applies not to all decisions the Attorney General is entitled to make, but to a

narrower category of decisions where Congress has taken the additional step to specify that the

sole authority for the action is in the Attorney General's discretion"); *Duan v. Zamberry,* No. 06-

1351, 2007 WL 626116, at *2 (W.D. Pa. Feb. 23, 2007) ("The subchapter at issue specifies only

that it is within the discretion of the Attorney General to adjust one's status; it does not address, much less specify any discretion associated with, the pace of application processing . . . [g]iven the absence of an explicit provision to that effect, the principles enunciated in [*Khan v. Attorney Gen.*, 448 F.3d 226, 232 (3d Cir. 2006)] and *Alaka* render Section 1252(a)(2)(B)(ii) inapplicable to a claim of adjudicatory delay"). Indeed, section 274a.13(d)) expressly requires USCIS to render a decision on an EAD within a specific amount of time. *Rodriguez*, 2018 WL 4783977, at *12 (noting "at the time Congress passed section 1184(p)(6), a timeframe would have been unnecessary in light of section 274a.13(d), which . . . provided a ninety-day timeframe for the agency to adjudicate EAD applications."). Second, in enacting section 1184(p)(6), the bill's sponsors explained that U Visa applicants "should not have to wait for up to a year before they can support themselves and their families," emphasizing that the "Vermont Service Center should therefore strive to issue work authorization and deferred action in most instances within 60 days of filing, consistent with the need for safe and competent adjudication." 154 Cong. Rec. H10,888, 10,905 (daily ed. Dec. 10, 2008) (statement of Reps. Berman and Conyers), 2008 WL 5169865. As the *Aslam* court found on its review of section 1255(a):

> Congress quite sensibly committed the merits of the decision on applications for adjustment of status to the Executive Branch, which, by its nature, retains the competence and expertise to evaluate whether a particular individual is eligible for legal permanent residence. At the same time, it is clear from the text of the INA that Congress intended the Secretary of Homeland Security to process and act on applications. If the pace of the Secretary's decision were immune from judicial review, the Executive Branch could unilaterally impose a *de facto* moratorium on all adjustment of status applications simply by delaying a final decision.

This court agrees that the scenario described by the *Aslam* court, that is, a *de facto* moratorium insulated from judicial review, is not an acceptable result. *See McNary v. Haitian Refugee Ctr.,*

*Inc.,* 498 U.S. 479, 496 (1991) (recognizing the "well-settled presumption favoring interpretations of statutes that allow judicial review of administrative action").

The court is satisfied as to its jurisdiction to review USCIS's delay in adjudicating Plaintiffs' request for work authorization and therefore turns to the merits of Plaintiffs' requests for EADs.

### 2.  Entitlement to EAD

The record shows as follows.  Plaintiff Solis sought an EAD when she completed her petition for U Visa status.  SR at 0021, 0087.  Plaintiff Solis and her husband, Plaintiff Heriberto Gonzalez Najera, completed a Form I-918 Supplement A, Petition for Qualifying Family Member of U-1 Recipient, in which they sought an EAD for Najera.  SR at 0149.  Plaintiff Solis submitted her application on October 8, 2014, ECF No. 65-1 at 4; SR at 0021, 0027, 00257, and her application remains pending.[9]

With respect to whether Plaintiffs' applications are bona fide, USCIS's representative, Donald Neufeld, who serves as the Associate Director for Service Center Operations Directorate ("SCOPS") within USCIS, testified to the meaning of the term.  The Parties agree that USCIS has not articulated a special definition for the term bona fide and that the "generic definition" applies.  SR at 00258-59.  The term "bona fide" is generally defined as "1. [m]ade in good faith; without fraud or deceit[,] 2. [s]incere; genuine."  Black's Law Dictionary (10th ed. 2014); ECF No. 65-1 at 7.  It is unclear from the record at what point USCIS determines whether an application is bona fide.  When asked, "at what point does a U visa applicant acquire work authorization," Mr. Neufeld testified, "[w]e grant work authorization normally . . . when they're

---

[9] The court cites to the Stipulated Record for the purpose of describing Plaintiff Solis's process for applying for EADs; however, Defendant does not dispute that the other Plaintiffs have completed and submitted the same forms and that their applications remain pending.

put on a waiting list." SR at 0254, 42:1-8. Mr. Neufeld also testified that he was not aware of

any particular step in the adjudication process at which an adjudicator considers and determines

whether an application is bona fide. *Id.* at 0258-59, 46:22-47:3 (Q: "In the processing

description you gave me, you're unaware if or when an application is deemed bona fide? A:

That's correct.").

Plaintiffs assert that USCIS recognizes in the context of U Visa petitions that the police

certification required under 8 C.F.R. § 214.14(c)(2)(i), "acts as a check against fraud and abuse."

ECF No. 65-1 at 7 (quoting Department of Homeland Security, *U and T Visa Law Enforcement*

*Resource Guide for Federal, State, Local, Tribal and Territorial Law Enforcement, Prosecutors,*

*Judges, and Other Government Agencies*, available at

https://www.dhs.gov/sites/default/files/publications/U-and-T-Visa-Law

EnforcementResource%20Guide_1.4.16.pdf). Plaintiffs also assert that USCIS agreed during the

2007 rulemaking process that the certifying agency is in the best position to verify certain factual

information because the certifying agency "is the primary point of contact between the petitioner

and the criminal justice system." ECF No. 65-1 at 7 (quoting New Classification for Victims of

Criminal Activity; Eligibility for "U" Nonimmigrant Status, 72 FR 53014-01, 53024 (Sep. 17,

2007)). Plaintiff Solis submitted the requisite certification from a certifying official in support of

her petition for U Visa status. SR at 0021, 0052. Indeed, the Solis Plaintiffs set forth in their

motion that "all of the principal applicants checked 'yes' on their U-Status forms and requested

work authorization more than three years ago"; and "the derivative applicant Plaintiffs filed

separate work authorization applications over three years ago." ECF No. 65-1. They assert that

"[a]ll of the Plaintiffs' principal or derivative U-status applications have been accepted and

receipted by the Agency, and all contain [] proper police certifications." *Id.* USCIS does not

dispute these assertions or otherwise contend that Plaintiffs' petitions appear incomplete or inauthentic.[10]

Plaintiffs have now waited almost four years to receive work authorization. Because there is no dispute as to either the period of delay or the bona fide nature of their applications, the court grants Plaintiffs' motion for summary judgment with respect to their request for work authorization and hereby orders USCIS to grant EADs to Plaintiffs within 30 days of this opinion and order. The court now turns to Plaintiffs' claim of unreasonable delay in rendering a decision regarding waitlist eligibility.

**B.    Review of Agency Inaction**

Plaintiffs contend that USCIS's delay of between 37 and 47 months to adjudicate their eligibility for the waiting list is unreasonable. USCIS argues that the delay is reasonable in light of its limited resources and competing priorities.

The question for the court in reviewing the Administrative Record for unreasonable delay is whether USCIS can "justify its delay to the court's satisfaction." *Cutler v. Hayes*, 818 F.2d 879, 898 (D.C. Cir. 1987); ECF No. 77 at 11. In assessing claims of an agency delay and whether delay warrants court action, courts have employed the factors set forth in *Telecomm. Research & Action Ctr. v. FCC* (the "TRAC Factors"). 750 F.2d 70 (D.C. Cir. 1984). These factors include the following: (1) "the time agencies take to make decisions must be governed by a 'rule of reason'"; (2) "where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason"; (3) "delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake"; (4) "the

---

[10] *See, e.g.,* ECF No. 17 at ¶¶ 29-36; ECF No. 59 at ¶¶ 29-36.

court should consider the effect of expediting delayed action on agency activities of a higher or competing priority"; (5) "the court should also take into account the nature and extent of the interests prejudiced by delay"; and (6) "the court need not 'find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.'" *Id.* at 80. *See Alkassab v. Rodriguez*, No. 2:16-CV-1267-RMG, 2017 WL 1232428, at *5 (D.S.C. Apr. 3, 2017) (applying the *TRAC* Factors).[11]

The court turns to the Parties' respective arguments and addresses first Plaintiffs' contention that Mr. Neufeld's declaration and deposition testimony are unreliable.

### 1.  Neufeld Declaration

#### a.  *Parties' Arguments Regarding Reliability*

As an initial matter, Plaintiffs argue that the court should not consider the declaration and Rule 30(b)(6) deposition testimony of USCIS's representative Donald Neufeld.  SR at 0001. Plaintiffs assert that USCIS failed to present a record sufficient for judicial review because Mr. Neufeld is not a reliable source of relevant information regarding Plaintiffs' petitions and the U Visa adjudication process, and therefore he "lack[s] any material knowledge of the facts necessary to determine whether a 37 to 47-month delay is reasonable."  ECF No. 65-1 at 9, 10. Defendant contends in response that because the delay herein at issue "stems from the fact that USCIS possesses finite adjudicatory resources," the "specifics of Plaintiffs' petitions are not relevant to the question of whether the agency's delay is reasonable."  ECF No. 77 at 1, 12; ECF No. 79 at 4.

---

[11] The Parties agree that the *TRAC* factors apply here.  *See* ECF Nos. 65-1 at 12, 77 at 13.

As Plaintiffs assert, Mr. Neufeld testified in many instances as to a lack of personal knowledge regarding the process for adjudicating U Visa petitions.[12]  However, Mr. Neufeld testified not on his personal behalf but on behalf of USCIS.  Federal Rule of Civil Procedure 30(b)(6) allows an entity to designate an officer, director, or any other person to testify "about information known or reasonably available to the organization."  Fed. R. Civ. P. 30(b)(6).  *United States v. Taylor*, 166 F.R.D. 356, 361 (M.D.N.C. 1996) ("The testimony elicited at the Rule 30(b)(6) deposition represents the knowledge of the corporation, not of the individual deponents").  Rule 30(b)(6) "imposes a 'duty to prepare the designee[ ] . . . [that] goes beyond matters personally known to the designee or to matters in which that designee was personally involved.'"  *Wilson v. Lakner*, 228 F.R.D. 524, 528 (D. Md. 2005) (quoting *Poole v. Textron, Inc.,* 192 F.R.D. 494, 504 (D. Md. 2000) (further citation omitted)).  The entity must prepare its designee "to the extent that matters are reasonably available, whether from documents, present or past employees, or other sources," and "the organization *is* expected to create a witness or witnesses with responsive knowledge."  *Id.* (emphasis in original).  However, there is no language in the Rule suggesting, and Plaintiffs cite no authority to support the contention, that the designee must possess personal knowledge as to each topic on which questions are

---

[12] *See, e.g.,* SR at 0225, 13:7-14 (testifying that he does not process U Visa applications and has not at any time during his employment with USCIS processed those applications); *id.* at 0226, 14:2-12 (testifying that he has received no training regarding the processing of U Visa applications); *id.* at 0234, 22:6-9 (testifying that he could provide "a general description" about how the service center processes U visa applications but did not have "detailed knowledge about the process."); *id.* at 0231, 19:1-7 (testifying in response to question as to whether he had personal knowledge of everything in his declaration, "[i]t depends on what you mean by personal knowledge . . . I'm aware of everything that's in here, and I have been informed that it's accurate by people who would be responsible for that.").  Mr. Neufeld also testified that he had not reviewed the alien registration file for Plaintiff Tomasa Romero Solis or for her qualifying family members, or the alien registration files for any of the Plaintiffs named in this matter.  SR at 0231, 19:21-20:11.

posed.  Plaintiffs do not argue that USCIS failed to adequately prepare Mr. Neufeld for his Rule 30(b)(6) deposition, but rather that the court should not consider Mr. Neufeld's testimony regarding matters on which he has no personal knowledge.  The Rule does not contemplate so rigorous a standard.

Additionally, Defendant does not defend the reasonableness of its delay on the basis of Plaintiffs' individual applications.  Rather, Defendant argues that "the reasonableness of delays in the resolution of administrative proceedings must be evaluated in the context of the allocation of resources and the amount of business pending before the relevant agency."  ECF No. 77 at 12 (quoting *Li v. Chertoff*, No. 07-CV-3836, 2007 WL 4326784, at *6 (E.D.N.Y. Dec. 7, 2007)).  Defendant asserts that Mr. Neufeld "testified extensively about the way in which USCIS allocates its adjudicatory resources," and, therefore, his declaration and testimony are adequate to provide the court with a record from which it can review the Agency's actions.  The court agrees and, accordingly, gives due consideration to the entirety of Mr. Neufeld's testimony.

### b.  Summary of Testimony

Mr. Neufeld attests that SCOPS adjudicates applications and petitions that do not require in-person interviews, such as U Nonimmigrant Status petitions.  SR at 0003, ¶ 13.  Of its five service centers, SCOPS has designated the Vermont Service Center ("VSC") and Nebraska Service Center ("NSC") to adjudicate petitions for U Nonimmigrant Status (Form I-918), Petitions for Qualifying Family Member of U-1 Recipient (Form I-918 Supplement A), and related filings.  *Id.* at 0004, ¶ 15.  The VSC adjudicates at least nine other types of requests for immigration benefits, and the NSC adjudicates at least ten other types of requests.  *Id.* at 0004-05, ¶¶ 16-17.  The VSC employs approximately 660 permanent Immigration Services Officers ("ISOs"), who adjudicate the immigration benefit requests; NSC employs approximately 676

ISOs.  *Id.* at 0005, ¶ 20.  In 2017, VSC received 832,458 new filings, down from 1,462,187 new

filings in 2015.  *Id.* at ¶ 18.  In 2017, NSC received 2,187,150 new filings, up from 1,697,469

new filings in 2015.  *Id.*  Through the first three quarters of 2018, VSC received 864,710 new

immigration benefit requests; NSC received 1,070,133 new immigration benefit requests.  *Id.* at

¶ 19.  Of those new immigration requests, 30,106 of them are new principal U Visa petitions and

22,560 of them are derivative U Visa petitions.  *Id.* at 0005-06, ¶ 22.  Through the third quarter

of 2018, USCIS received 27,096 new principal petitions and 18,822 new derivative petitions.  *Id.*

at 0006, ¶ 22.  Currently pending with USCIS are 128,079 principal petitions and 86,504

derivative petitions.  *Id.*

Between VSC and NSC, approximately 83 permanent ISOs are assigned to adjudicate

petitions for U Nonimmigrant Status and filings related to those petitions.  This number

represents approximately six percent of the available workforce at VSC and NSC.  SR at 0006, ¶

24.  New ISOs receive specialized training and participate in a six-week mentorship with an

experienced ISO.  *Id.* at ¶¶ 25-27.  In August 2017, the VSC "streamlined its file management

procedures," so as to increase the time that ISOs devote to adjudicatory tasks.  *Id.* at 0013, ¶ 60.

In October 2018, USCIS began training thirteen additional ISOs to adjudicate U Visa petitions

and related filings.  *Id.* at 0014, ¶ 62.  These additional ISOs increased USCIS's capacity to

adjudicate U Visa petitions by sixteen percent.  *Id.*  Also, USCIS has authorized ISOs who

adjudicate U Visa petitions to work up to thirty hours of overtime per two-week pay period.  *Id.*

at 0013, ¶ 61.  In response to Plaintiffs' attorney's question whether "[p]roviding additional

resources to U visa adjudications" is a priority for USCIS, Mr. Neufeld testified, "[w]here we

can, yes, that's a priority."  SR at 0299, 87:8-14.

U Visa adjudication involves two distinct phases: the "waiting list phase"; and the "cap processing" phase.  SR at 0008, ¶ 31.  During the waiting list phase, USCIS reviews Form I-918 petitions to determine whether the petitioner meets the U Visa eligibility requirements and should be placed on the waiting list.  *Id.* at ¶ 32.  During the cap processing phase, the file is again presented to an ISO for review.  SR at 0236, 24:19-22.  At both phases, an ISO performs adjudicatory tasks that include security and background checks, a review of the evidence submitted in support of the Form I-918, and a review of the petitioner's admissibility.  SR at 0007-09, ¶¶ 29, 36-37, 41; SR at 0237, 25:4-10; SR at 0300-04, 88:14-92:18. [13]

Mr. Neufeld testified that ISOs run the "first set" of background checks within the first fifteen to thirty days that a U Visa petition is filed.  SR at 0304-05, 92:19-93:2.  Mr. Neufeld attests that background checks include: (a) a Federal Bureau of Investigation fingerprint check for relevant criminal history records; (b) "a check against the DHS-managed TECS database, which contains records and 'watch list' information from more than twenty federal law enforcement and intelligence agencies"; and, if a waiver of inadmissibility has been requested, (c) a Federal Bureau of Investigation name check, "which is run against FBI investigative databases containing information that is not necessarily revealed by the FBI's fingerprint check of TECS."  SR at 0007, ¶ 29.  Mr. Neufeld attests that USCIS "must complete security and background checks before it adjudicates any application or petition for which checks are required."  *Id.*

---

[13] Because the delay herein subject to review is the period of time in which USCIS determines whether the U Visa petition should be placed on the waiting list, not the time in which it takes USCIS to adjudicate a U Visa petition, the court does not further summarize Mr. Neufeld's testimony regarding the cap processing phase.

If there are any "hits" on "the initial background checks," an ISO "resolve[s]" the hits at the time they are identified.  SR at 0305, 93:9-11.  After the hits are resolved, or in the instance of no hits, "the case would go sit on a shelf waiting for its time in the . . . order of sequencing for adjudication."  *Id.* at 93:13-16.  When the petition reaches the front of the line for adjudication, an ISO runs the background checks again.[14]  *Id.* at 93:17-20.  Mr. Neufeld testified that he could not ascribe an average amount of time to the background check process, and that some checks, like fingerprint checks, are returned within forty-eight hours, but other checks, such as name checks, can vary "pretty significantly."  SR at 306-07, 94:7-95:1 ("I know that name checks . . . can be as short as a few weeks and as long as months").

Mr. Neufeld attests that USCIS "generally reviews Form I-918 U nonimmigrant status petitions for waiting list eligibility in the order in which they are received."  SR at 0008, ¶ 33. He attests that there are three exceptions to this general rule.  First, USCIS expedites the pace at which it adjudicates a U Visa petition when the petitioner files, and USCIS grants, a written request for expedited adjudication.[15]  *Id.* at ¶ 34.  Such requests to expedite are not unique to U Visa petitions and Mr. Neufeld testified that he "would be surprised if many were granted."  SR at 0321-0323, 109:2-111:1. Second, USCIS expedites an adjudication on request from the Bureau of Immigration and Customs Enforcement ("ICE").  SR at 0008, ¶ 35.  ICE makes such a request when: (1) the petitioner is in removal proceedings or is subject to a final removal order;

---

[14] The fingerprint check must be less than fifteen months old at the time any application or petition is adjudicated.  SR at 0007, ¶ 30.

[15] Mr. Neufeld attests that "USCIS policy permits the agency to expedite the adjudication of a benefit request at the discretion of office leadership if it meets one or more of the following criteria: (1) severe financial loss to company or person, (2) emergency situation, (3) humanitarian reasons, (4) nonprofit organization whose request is in furtherance of the cultural and social interests of the United States, (5) Department of Defense or national interest situation, (6) USCIS error, or (7) compelling interest of USCIS."  SR at 0008, ¶ 34.

and (2) "approval of [the] petition would provide an immediate basis for relief for the [petitioner]." *Id.* [16] Third, USCIS adjudicates derivative petitions at the same time that it adjudicates the corresponding principal petition, which can cause a derivative petition to be adjudicated before earlier-filed petitions. *Id.* at 0009, ¶ 39. These exceptions are created by policy guidance, not by the governing regulations. SR at 0385-86, 173:21-174:3.

### 2.    Review of the Delay

Defendant contends that the challenged delay in determining Plaintiffs' waitlist eligibility "stems from the fact that USCIS possesses finite adjudicatory resources." ECF No. 77 at 1. Defendant further contends that the fourth TRAC Factor regarding competing priorities weighs in its favor because "if the Court compelled USCIS to act on Plaintiffs' petitions, agency action necessarily would come at the expense of action on earlier-filed petitions"; Defendant asserts the court can rely exclusively on this factor to find that the delay is reasonable. *Id.* at 13-14. Of note, at no point does Defendant base its reasonableness argument on the circumstances of Plaintiffs' individual petitions.

For the reasons that follow, the court finds that USCIS effectively if unofficially completed the process of determining Plaintiffs' eligibility for the waiting list within the first fifteen months of when Plaintiffs filed their respective petitions. The court also finds that lack of funds and resources alone is not a sufficient explanation for the delay, and Mr. Neufeld fails to

---

[16] On June 11, 2019, Defendant filed a notice to the court seeking to explain that the statement regarding the expedition of an adjudication on request from ICE "was incomplete in the following way: If a U-status petitioner is in ongoing removal proceedings, ICE field offices typically request, and USCIS service centers typically grant, an expedited adjudication only if the petitioner is detained at government expense." ECF No. 82 at 1. Plaintiffs objected to the notice and argue that USCIS's error further underscores that USCIS does not adjudicate U Visa petitions according to a rule of reason, ECF No. 83, which the court discusses in greater detail below.

testify as to the information necessary to determine whether the delay is reasonable in light of USCIS's budget and resources. Finally, the court disagrees that the fourth TRAC Factor weighs in Defendant's' favor, and finds rather that USCIS has not established adherence to its own rule of reason such that court-ordered action on Plaintiffs' petitions would interfere with USCIS's other functions and activities.[17]

### a. Subject Petitions

The court begins with the circumstances of Plaintiffs' individual petitions. Mr. Neufeld testified that an application is waitlisted if it is "otherwise approvable but for the 10,000 cap." SR at 0331, 119:6-10. Mr. Neufeld's testimony demonstrates that an application is otherwise approvable if the background checks are clean, the application is bona fide, and there are no issues of admissibility. With respect to background checks, Mr. Neufeld testified that ISOs run the checks described above within the first fifteen to thirty days of when a U Visa petition is filed. He testified that ISOs resolve issues, or "hits," uncovered by the background checks as soon as they arise. Mr. Neufeld further testified that some background checks can take as long as "months"; but he did not suggest that the process extends beyond a year, and certainly not beyond fifteen months, at which point the results of the fingerprint checks are no longer reliable. With respect to whether Plaintiffs' petitions are bona fide, there is no dispute that Plaintiffs' petitions are complete and that the supporting documentation appears authentic.[18] Finally, the

---

[17] "When agency recalcitrance is in the face of a clear statutory duty or is of such magnitude that it amounts to an abdication of statutory responsibility, the court has the power to order the agency to act to carry out its substantive statutory mandates." *Public Citizen Health Research Group v. Commissioner, Food & Drug Admin.*, 740 F.2d 21, 32 (D.C. Cir. 1984) (citing *Adams v. Richardson*, 480 F.2d 1159 (D.C. Cir. 1973) (en banc) (per curiam)). "[E]ven when agency delay or recalcitrance does not rise to a level that justifies either of the above courses, APA empowers the court to evaluate the pace of the agency decisional process and to order expedition if the pace lags unreasonably." *Id.*

[18] *See, e.g.,* ECF No. 17 at ¶¶ 29-36; ECF No. 59 at ¶¶ 29-36.

record is silent as to issues of admissibility as to any Plaintiff.  Indeed, Defendant does not argue

or suggest that the delay in determining Plaintiffs' waitlist eligibility is the result of information

learned during their background checks, questions regarding authenticity of documents, or issues

concerning admissibility.[19]  Defendant argues only that the delay is the result of budget

constraints.  However, Mr. Neufeld's testimony shows that ISOs essentially completed the

administrative process for determining Plaintiffs' waitlist eligibility within months of when

Plaintiffs filed their petitions.[20]  Accordingly, the court cannot find that Defendant's delay in

determining Plaintiffs' waitlist eligibility is the result of insufficient funds and resources.

### b.  *Limitations Attributed to Funding and Resources*

Putting aside the specific circumstances of Plaintiffs' petitions, the court turns to

Defendant's lead argument, which, laid bare, asserts that any delay caused by insufficient funds

and resources is *per se* reasonable.  Were the court to accept this rationale, it would essentially

endorse the notion that any delay by USCIS is immune from judicial review where USCIS

claims inadequate funding.  This outcome is not acceptable.  There is no basis in the record or in

the legislative history of either the Victims of Trafficking and Violence Protection Act or the

TVPRA from which to infer that when Congress passed measures to enhance protections

available to immigrant victims of violence, Congress anticipated that the Agency tasked with

---

[19] As mentioned above, USCIS sent notices to Plaintiffs Urias, Solis, and Najera in March 2019 requesting additional evidence.  ECF Nos. 79-3, 79-4, 79-5.  Defendant does not argue that the omission of the materials it now seeks prevented USCIS from rendering a decision on Plaintiffs' waitlist eligibility.

[20] The record supports finding that each U Visa application is unique and that the complexities of the application dictates the amount of time necessary for an ISO to render a decision.  *See, e.g.,* SR at 0379, 167:12-14.  There could be a petition that requires an unusual amount of time to adjudicate due to circumstances such as an applicant's extensive criminal history or the questionable authenticity of biographic documents.  Defendant does not argue that such is the case for Plaintiffs.  Indeed Mr. Neufeld did not review Plaintiffs' individual applications and was unable to testify as to their contents.  *See, e.g.,* SR at 0379, 167:7-11.

determining the recipients of those benefits could delay, based on reasons that are essentially

within the Agency's exclusive control,[21] the execution of its statutory mandate without exposing

itself to judicial review.  *See* 154 Cong. Rec. H10,888, 10,905, 2008 WL 5169865 (mandating a

report from the Department of Homeland Security providing information on funding, staffing,

and training necessary to the adjudication of victim-related immigration applications such as U

Visas).  The court notes that U Visa status expires after four years and at the time of Mr.

Neufeld's deposition the average wait time for determination of waitlist eligibility was 48 to 49

months, or approximately four years.  SR at 0352-53, 140:21-141:02.

To the extent Defendant asserts only that the present delay is reasonable when considered

in light of the operating budget and available manpower of recent years, the court agrees with

Plaintiffs that the record fails to establish a metric by which to test that contention.  *See* ECF No.

65-1 at 11.  Mr. Neufeld testified that "the metrics that go into adjudication capacity," are

"available officer hours and the length of time it takes per case to adjudicate the case."  SR at

0361, 149:2-6.  Mr. Neufeld provided testimony as to how many ISOs are assigned U Visa

petitions, and the record sets forth USCIS's operating budget from 2017 onward.  However, the

record does not explain how USCIS measures efficiency or productivity.  Mr. Neufeld testified

that he does not know "the hours per case rate [] for U [Visa petitions]."  SR at 0324, 112:3-21.

He testified that USCIS tracks "on average how many hours per case it takes for an ISO to take

different actions [on a file]," and shares "that information [] with [the] ISO[s] and []

incorporate[s] [it] into their performance plan," *id.* at 0325, 113:4-9, but explained that there are

---

[21] In fiscal year 2017, congressional appropriations accounted for only 2.85 percent of USCIS's budget ($119,139,000).  The Agency generated the remaining 97.15 percent of its budget by charging fees for certain benefit applications.  ECF No. 77 at 4.  It would appear that USCIS is predominantly responsible for funding itself.

no "guidelines on how long it should take to [adjudicate] a particular U visa application," *id.* at

0324, 112:3-21.  An ISO's performance is rated and the potential for promotion is based on how

quickly the ISO takes action compared to his or her fellow ISOs.  *Id.* at 113:10-19.  Additionally,

Mr. Neufeld could not describe how long it takes an ISO to process a U Visa petition pursuant to

a request to expedite under one of the exceptions.[22]  SR at 0332, 120:17-21.  Mr. Neufeld also

could not specify the number of cases that are expedited based on the exception that the applicant

is involved in a removal proceeding but testified that the number is "pretty voluminous."  *Id.* at

0339, 127:16-22.  Mr. Neufeld also testified that USCIS does not "keep track of what the – the

productivity is on overtime compared to non-overtime."  *Id.* at 0378, 166:3-19.  Thus, while

USCIS has authorized ISOs to work up to 30 hours of overtime per two-week pay period, there is

no measurement of how those increased hours have impacted the backlog.[23]  Mr. Neufeld's

testimony does not provide sufficient detail by which to establish a method for determining what

constitutes a reasonable delay in adjudicating waitlist eligibility, taking into consideration

available funds and resources, because it does not provide a baseline standard by which to

---

[22] Mr. Neufeld attests that "[i]f requested by Immigration and Customs Enforcement [], USCIS may make a prima facie determination and/or conduct expedited waiting list adjudication of Form I-918 petitions filed by individuals in various stages of removal proceedings."  SR at 0008, ¶ 35.  However, Mr. Neufeld testified that the Agency had not established a definition for "prima facie determination," and was unable to describe a time frame for how quickly ISOs adjudicate petitions on an expedited basis.  SR at 0330, 118:3-120:21.

[23] Defendant emphasizes that six percent of ISOs adjudicate U Visa petitions "almost exclusively" whereas U Visa petitions account for only two percent of total filings.  Defendant argues that these figures "indicate that USCIS allocates a disproportionately high percentage of its resources to U-status adjudications," which supports finding that the "instant adjudicatory delays are reasonable."  ECF No. 79 at 4-5.  Mr. Neufeld testified during his deposition that USCIS is indeed "allocating more resources to the U visa adjudications than [to] other types of benefits . . . on a percentage basis," but acknowledged that the wait time for adjudications has not decreased but rather increased.  SR at 0288, 76:1-11.  Far from demonstrating on its face the reasonableness of the delay, the increase in resources with no perceptible improvement in results begs the question of whether the delay is reasonable.

measure the ISO's productivity.[24]  Accordingly, the court finds that Defendant has not carried its burden of demonstrating that a delay of 37 months or more to render a determination on waitlist eligibility is reasonable.

### c.  *Application of the TRAC Factors*

The court next considers application of the TRAC Factors.  Defendant argues that the relief Plaintiffs request would "simply move all other[] [petitioners] back one space and produce no net gain," and that when such an argument is advanced, courts rely exclusively on the fourth TRAC factor, "the effect of expediting delayed action on agency activities of a higher or competing priority."  ECF No. 77 at 13.  Defendant contends that "the competing-priorities factor weighs in USCIS's favor," because "[i]f the Court compelled USCIS to act on Plaintiffs' petitions, agency action necessarily would come at the expense of action on earlier-filed petitions."  *Id.* at 14.  Defendant asserts that the other TRAC Factors are irrelevant in light of this argument.

As an initial matter, the court observes that adoption of Defendant's argument would result in the same unacceptable immunity from judicial review as addressed above.  Under this approach, the court could never hold the Agency accountable for its statutory obligations because

---

[24] Mr. Neufeld testified as to how one might develop a standard for measuring productivity: "[t]he number of officers yields how many available productive hours and then divide – and then divide that by the hours per case, and that would tell you how many [applications] we should expect [to waitlist next year]."  SR at 0365-66, 153:21-154:9.  Mr. Neufeld further testified that one would also have to factor into the equation that the ISOs rendering the waitlist determinations are also rendering final determinations in the cap processing phase for 10,000 applications.  *Id.* at 154:10-15.  Mr. Neufeld explained that "anybody who has the – the inputs could do that calculation," i.e., how many U Visa applications the Agency expects to waitlist in a year, and defined those inputs as "the hours per case and what the average is of the productive hours per officer."  Mr. Neufeld was not able to provide those quantities.  SR at 0366-67, 154:10-155:11.

it could never grant the relief that Plaintiffs seek.  USCIS could stop rendering waitlist

determinations altogether, regardless of resources and funding.[25]

Second, the court notes that Defendant does not articulate the precise activity that is

entitled to greater prioritization than adjudicating Plaintiffs' waitlist eligibility.  The court infers

that the higher priority at issue is the execution of what Mr. Neufeld described as the Agency's

chronological rule of reason.  Defendant's position requires the court to look at the first and

fourth TRAC Factors together.

With respect to the first TRAC Factor, that agencies must act pursuant to a "rule of

reason" in rendering their decisions, Defendant argues that it "generally reviews Form I-918 U

nonimmigrant status petitions for waiting list eligibility in the order in which they are received."

SR at 0008, ¶ 33.  Mr. Neufeld testified that USCIS adjudicates waitlist eligibility according to

the chronological rule of "first in, first out."  However, Mr. Neufeld's testimony demonstrates

that USCIS adjudicates petitions out of order in a number of instances, including when doing so

would prevent "severe financial loss to company or person," or to address an "emergency

situation," or serve a "compelling interest of USCIS."  SR at 0008, ¶ 34.  By example, Mr.

Neufeld testified that USCIS had expedited the adjudication of a petition in response to pending

---

[25] Defendant relies heavily on *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d
1094 (D.C. Cir. 2003), to argue the importance of not allowing one applicant to move ahead of
other equally deserving applicants.  The court is not persuaded that *Mashpee* carries the day for
Defendant.  The list at issue in *Mashpee* contained only 10 petitions, and there is no suggestion
that the reviewing agency routinely adjudicated later-filed petitions before earlier-filed petitions
based on various exceptions to the rule of reason, as the record shows is USCIS's pattern of
practice.  The *Mashpee* court recognized that "[r]esolution of a claim of unreasonable delay is
ordinarily a complicated and nuanced task requiring consideration of the particular facts and
circumstances before the court."  *Id.* at 1100.  This court finds that the circumstances concerning
the delay herein at issue are distinguishable from those considered in *Mashpee*, not only on
account of USCIS's practice of prioritizing petitions outside of its stated rule of reason but due to
the amount of time Plaintiffs have already waited.  Based on USCIS's projected wait times,
Plaintiffs' petitions qualify as some of the oldest petitions awaiting adjudication.

litigation, and that such action would "fit into" the criteria of serving the Agency's compelling

interest.  SR at 0335, 123:4-124:2.  Indeed, Defendant's supplement offered June 11, 2019

clarified that USCIS typically, but not always, grants a request to expedite the application of a

petitioner involved in removal proceedings but only if the petitioner is detained at government

expense.  ECF No. 82 at 1.  This is a departure from how USCIS described operation of the

exception in its motion.  *Id.*  Furthermore, Mr. Neufeld does not know if USCIS has discretion to

deny a request from ICE to expedite.  SR at 0340, 128:13-16.

        In response to Plaintiffs' argument that the exceptions swallow the rule, Defendant

asserts that the "'first in, first out' rule is only a part of the relevant rule of reason," and that the

exceptions "are a part" of the rule.  ECF No. 77 at 15.  Defendant also asserts that the exceptions

are "entirely rational."  *Id.*  But even accepting this position, it is clear from Mr. Neufeld's

testimony, the only evidence offered in support of Defendant's position, that USCIS's rule of

reason is flexible and driven according to the prioritization of its interests, as defined by USCIS.

Furthermore, Mr. Neufeld was unable to explain how the processing times, or any other data

available to him, serve as evidence that USCIS follows its own rule of reason.  ECF No. 65-1 at

14.  In his declaration, Mr. Neufeld attests that "USCIS generally reviews Form I-918 U

nonimmigrant status petitions for waiting list eligibility in the order in which they are received,"

and cites for support the USCIS website for case processing times.  SR at 0008, ¶ 33 (citing

USCIS, *Check Case Processing Times: Processing time for Petition for U Nonimmigrant Status*

*(I-918) at Vermont Service Center, available at* https://egov.uscis.gov/processing-times/).  When

asked why the website supports the contention that USCIS adjudicates waitlist eligibility

chronologically, Mr. Neufeld acknowledged that the published processing times represent only

the age of the cases that USCIS is adjudicating and, owing to how the three exceptions result in

frequent adjudication of younger applications, that the processing times do not reflect that USCIS adjudicates applications in chronological order.  SR at 00308-09, 96:7-97:13.

Accordingly, regardless of how the three exceptions operate, there is an absence of proof that USCIS adjudicates petitions according to the rule of reason it professes to follow.  And, without evidence demonstrating that USCIS adjudicates petitions in the order in which they are received, USCIS cannot show that such activity is entitled to any higher a priority than adjudicating Plaintiffs' eligibility, particularly in light of how long Plaintiffs have already waited.  *Cf. Potomac Electric Power Co. v. I.C.C.*, 702 F.2d 1026, 1034 (D.D.C. 1983) ("there must be a 'rule of reason' to govern the time limit to administrative proceedings . . . . [q]uite simply, excessive delay saps the public confidence in an agency's ability to discharge its responsibilities and creates uncertainty for the parties, who must incorporate the potential effect of possible agency decision making into future plans").  The lack of record evidence that Defendant either follows its rule of reason or that compelling Agency action here would come at the expense of a higher or competing priority weighs in Plaintiffs' favor.

The second, third, and fifth TRAC Factors either have a neutral impact on the analysis or weigh in Plaintiffs' favor.  The second factor considers whether Congress has indicated the speed at which the Agency should render a decision.  Plaintiffs argue that Congress so indicated in 8 U.S.C. § 1571(b) and through the statements of the sponsors who supported the 2008 amendments to the U status program, addressed above.  ECF No. 65-1 at 16.  Defendant argues that the language in section 1571(b) is merely precatory.  ECF No. 77 at 16.  The court finds this factor to be neutral.  The third TRAC Factor considers whether an agency's delay impacts human health and welfare or concerns only matters of economic regulation.  As Plaintiffs note, USCIS admitted in its amended answer that "Plaintiffs' U nonimmigrant petitions implicate their health

and welfare interests." ECF No. 59, ¶ 91. Indeed, Defendant does not contest that the relief

Plaintiffs seek impacts their welfare; rather Defendant argues that this factor cannot weigh in

Plaintiffs' favor because all petitioners who are awaiting adjudication can assert the same health

and welfare interests. ECF No. 77 at 16. Defendant's point is not apropos, however, to

recognizing when a delay is less excusable because lives and well-being are at stake. "This is

particularly true when the very purpose of the governing Act is to protect those lives." *Public

Citizen Health Research Group v. Auchter*, 702 F.2d 1150, 1157-58 (D.C. Cir. 1983). The court

finds the factor weighs in Plaintiff's favor. The fifth factor instructs the court to consider the

nature and extent of the interests prejudiced by delay. Again, Defendant asserts not that

Plaintiffs have incurred no prejudice by the delay herein at issue, but that any prejudice is

essentially meaningless for the purpose of this analysis because all similarly-situated petitioners

are prejudiced by the Agency's delay. *Id.* at 17. This contention does nothing to neutralize the

undisputed harm that Plaintiffs suffer as they continue to wait for a determination of their waitlist

eligibility.[26]

     The court finds that Defendant has failed to produce sufficient evidence that the delay in

adjudicating Plaintiffs' eligibility for the waiting list is reasonable. In light of the particular

undisputed circumstances surrounding Plaintiffs' petitions, the court further finds that additional

fact finding by the Agency is not warranted. Accordingly, the court will enter summary

judgment in favor of Plaintiffs. USCIS is ordered to render a determination within 30 days of the

date of this order as to all Plaintiffs whose petitions have not yet been adjudicated for waitlist

---

[26] The sixth factor states only that "the court need not 'find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.'" The Parties do not address this factor and it has no bearing on the court's analysis.

eligibility.  Significantly, this ruling has no bearing on any delay associated with the cap

processing phase and whether Plaintiffs are entitled to U Visas.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion for summary judgment is granted and

Defendant's motion for summary judgment is denied.  Judgment shall enter in favor of Plaintiffs.

**IT IS SO ORDERED.**


/s/Margaret B. Seymour_____

July 11, 2019                                          Margaret B. Seymour
Charleston, South Carolina                    Senior United States District Judge